HORNSTRA, et al, Appellants, v. AVON STATE BANK, et al, Respondents.

(226 N. W. 740.)

(File No. 6857.  Opinion filed September 20, 1929.)

E. E. Empey, of Springfield, for Appellants.

W. L. Redden, of Tyndall, for Respondent Weddell.

F. M. Scoblic, of Tyndall, for Respondents Dwight and Smith.

H. D. Giedd, of Avon, for Respondents Avon State Bank and Rauch.

BROWN, J. Cornelius J. Hornstra died intestate February 24, 1923, leaving as his heirs his wife, Mary, and six sons, John, Garrit, George, Peter, Edgar, and Ernest, and a daughter, Mable. The widow was appointed administratrix, and on November 10th filed a final account, reciting that Peter, Edgar, Ernest, and John, who was then deceased, had all received advances and loans from their father in excess of the value of any distributive share to which they would be entitled, and praying that the estate, which consisted of a quarter section of land valued at $15,000, should be distributed, after the death of the widiw, to George, Garrit, and Mable in the

proportion of an undivided one-third to each. The widow of John Hornstra filed written objections to the report, alleging that her deceased husband had received no advances or loans from his father. Avon State Bank filed written objections, alleging that it held two judgments against Peter Hornstra, one for $41.41 dated August 3, 1923, and one for $61.95 dated February 27, 1925, and alleging that said judgments were a lien on the distributive interest of Peter Hornstra in the estate of his father. F. L. Smith filed a written objection, alleging that he held a judgment against Peter Hornstra for $612.29 dated September 4, 1923, which he alleged was a lien on the distributive share of Peter Hornstra, and T. W. Dwight, as trustee in bankruptcy of the estate of Peter Hornstra, filed written objections alleging that claims against Peter Hornstra had been filed with him as such trustee, and that he is entitled to the share of Peter Hornstra, which he alleges is a one-sixth interest in the property of his father.

No objections were made or filed to that part of the report of the administratrix which alleged that Edgar and Ernest Hornstra had received advances of money far in excess of the distributive share to which they would be entitled under the statutes of descent. The county judge being disqualified, a hearing on the report and objections was had before Hon. R. B. Tripp, circuit judge, acting as county judge, who found that Mary Hornstra was entitled to an undivided one-third interest and each of the seven children of deceased hereinbefore named was entitled to two twenty-firsts. An appeal was taken to the circuit court, where the case was submitted upon a transcript of the evidence taken in the county court, and from findings and judgment in substance the same as that of the county court an appeal is taken by the administratrix and George, Garrit, and Mable as appellants.

Edgar Hornstra was called as a witness for appellants, and respondents objected to any evidence being given by him, because it appears that he was interested in the estate, and that his testimony would necessarily show transactions between parties, one of whom is now deceased. The objection was clearly untenable at that stage, if not at any stage, and no other objection was made to his testimony, except in so far as it related to the $2,000 advanced to John Hornstra. Edgar testified in substance that he and his brother Ernest had received from their father in his lifetime advances of

money totalling $9,607.08 (in support of which he produced checks aggregating that amount), and that at the time this money was received by them their father stated that it was to be considered as part of their share of his estate, that he himself considered it as such, and made no claim to any interest in his father's estate. He further testified that $2,000 was paid to his brother John Hornstra through a check paid from his father's account.

Ernest Hornstra corroborated Edgar's testimony as to the receipt of $9,607.08 by him and Edgar from their father, and that it was given by their father and received by them as their share in the estate the father might leave, and he also disclaimed any interest in the estate of his father. He testified that he heard his father telling John two or three weeks before giving him the $2,000 check that, if John did not pay back the $2,000 he wanted his father to advance, it should be considered part of his share in the father's estate.

George Hornstra testified that the checks representing the $9,607.08 were paid out of his father's funds, as was also the check for $2,000 to John, and that none of these amounts had ever been paid back, that he knew this because he took care of all of his father's business, and all of the business relating to these payments was done through him.

Peter Hornstra testified that he received money from his father to the amount of $3,500, not all at one time, but in checks for various amounts at different times, and that, when he got this money, his father said to him that, if he did not pay it back, it would be considered as his share of the father's estate, that he had never paid anything back to his father or to the estate, and had deemed these payments as being his share of his father's estate, and at no time since the death of his father has he claimed to have any interest in the estate.

Sadie Weddell, who was the sole beneficiary by will of the estate of John Hornstra, her deceased husband, testified that in June, 1925, George Hornstra came to her residence in Avon and asked her to sign a deed to the land, which she did not do; that George did not say that the $2,000 obtained by her deceased husband on the check for that amount was money of his father, and that she had an understanding that it was George's money.

The foregoing is, in substance, all of the testimony.

518

Appellants advance three propositions: First, that creditors of a distributee have no standing to question the final account of an administrator; second, that the moneys given by the father to the sons Edgar, Ernest, Peter, and John were advancements; third, if not advancements, the sons receiving such moneys were indebted for the amounts thereof to the estate, and that such indebtedness must be deducted from their shares before distribution could be made by the county court. ʼ We think the last of these propositions is well founded, and it will not be necessary to pass up the other two.

It is undisputed that Edgar and Ernest were in partnership, and together received from their father the sum of $9,607.08, no part of which has been repaid. They each testified that at the time they received this there was an understanding between them and their father that it would be considered as their share in his estate. It was not intended as a gift. In regard to the interest of these two in the estate of their father, no one is making any contest or controversy. Each of them testified that he had no interest, and claimed no interest, in the estate, and no one else is claiming that either of them have any interest in the estate, yet the court forced upon them an interest to the extent of two twenty-firsts each. The evidence is undisputed that Peter Hornstra received from his father $3,500 in payments at different times, and that, when such moneys were furnished him by his father, he told him that, if he did not pay it back, it would be taken out of his share of the estate, and that no part of it ever was paid back. It is therefore undisputed that the $3,500 received by Peter was not intended as a gift, but was to be repaid to the father, and, if not repaid, it was to be taken out of Peter's share of the estate. In regard to the $2,000 paid to John, a canceled check for which was introduced in evidence, Ernest and Edgar both testified that they were present when a conversation was had between their father and John in regard to this money shortly before it was given, and that the father said then that, if John did not pay it back, it would be considered part of his share in the estate. George testified that the checks representing the money advanced to Peter, and the one for $2,000 representing money advanced to John, were all paid out of his father's account, and that his father requested him to draw these checks, that John never owed him any money personally, but the $2,000 was taken out of the father's account, and no part of it had been repaid.

It is thus undisputed that the money advanced to Peter and John was likewise advanced on an understanding or agreement that it was to be repaid, and, if not repaid, it should be taken out of the share of Peter and John in the father's estate. The only evidence in the case which it can be claimed in any way controverts any part of the foregoing evidence is that of John's widow, Mrs. Sadie Weddell, who testified that, when George asked her to sign a deed to the land, he did not say that the $2,000 was money of his father, and she had the understanding that it was his own money. She does not say how she came to have such an understanding, and her testimony is not sufficient to raise any conflict with that of the other witnesses. It follows that the finding of the court to the effect that the payments made by Cornelius Hornstra during his lifetime to Peter, Edgar, Ernest, and John were made as gifts, and were so intended, is without any support in the evidence.

In addition to the express testimony given on the subject, the fact that the amounts to the different sons were so various would in itself indicate that they were intended to be repaid or taken out of the shares which the several sons would inherit; there being no evidence in the record from which it could be inferred that any of these four sons had any greater claim upon the father than any other. There is nothing in the record showing when those payments were made, except as to the $2,000 payment to John. The date of the check is not shown in the record, but Edgar Hornstra testified that the conversation between his father and John in regard to the furnishing of this money must have taken place five or six years before the trial in the county court. Without the inclusion of any interest on any of the payments, it is apparent that Edgar, Ernest, and Peter each received more than his distributive share in the estate would amount to. The value of the real estate as found by the court was $15,000. To this should be added the amount due from those sons in order to get the aggregate amount of the estate. This would make an aggregate of $30,107.08, of which the widow would be entitled to one-third or $10,035, leaving $20,072 to be divided among the seven children, which would give $2,867 to each. John received within $867 of what his share would amount to, and, if interest on the $2,000 was computed from the time that record shows it was advanced, what was due from him to the estate would be practically equal to the amount of his distributive share.

■ It is argued by respondents that the question of the right to deduct the indebtedness of these heirs or set it off against their distributive shares is not before the court under the allegations of the final account and report of the administratrix, In this respondent's are clearly mistaken. The final report sets forth that Peter, Edgar, Ernest, and John, sons of the deceased, have all, prior to the death of deceased, received from the deceased "advances and loans in amounts far in excess of the value of any distributive share of said estate they would otherwise be entitled to, and that they are each now indebted to the estate in sums in excess of their distributive shares." It will be observed that this indebtedness is not alleged to have been in the form of what is known to the law as "advancements," but is a general allegation of money advanced or given to these sons which, so far as the final report shows, might have been either in the form of advancements or of simple indebtedness.

■ It is further contended that, since there is no proof in writing that the advances or loans of money were made as advancements, they cannot be so considered, and that, considered simply as indebtedness due from the several sons, the county court had no authority to set off such sums as against the distributive shares to which said sons would otherwise have been entitled. We think this contention cannot be sustained. In Stenson v. H. S. Halvorson Co., 28 N. D. 151, 147 N. W. 800, 803, L. R. A. 1915A, 1179, Ann. Cas. 1916D, 1289, under statutes identical with our own, this question was thoroughly considered, and it was there held that an indebtedness owed by an heir to the estate constituted a prior equitable lien against such heir's distributive share of the estate as against the lien of judgments docketed against it. While there are authorities to the contrary, the reasoning and holding in the case meet with our approval. A judgment is a lien only against the property of the judgment debtor, and, while on the death of an ancestor intestate his real estate at once descends to his heirs, it does so under the provisions of our Rev. Code 1919, § 700, "subject to the control of the county court, and to the possession of any administrator appointed by that court for the purpose of administration." In the process of administration it is entirely just and equitable that any indebtedness due from an heir to the estate should first be deducted from any distributive share to which he

might otherwise be entitled, and that, in reality, he is only entitled on any principle of justice or equity to whatever balance there may be in his distributive share after deducting therefrom whatever he owes to the estate.

"The right of the creditor is not only subject to the priority of the debts of the intestate, but also the share which he can reach is that which remains after the deduction of the indebtedness, if any, of the heir or distributee to the estate, and after the deduction of the value of any advancements which the heir or distributee has received." 18 C. J. 965.

.It is unnecessary to here cite the numerous cases in which this principle has been announced. A large number of them will be found in the opinion in Stenson v. H. S. Halvorson Co., supra.

█ It is also contended that the county court had no jurisdiction to direct the equitable set-off in the indebtedness due from the sons to the estate, but in Stenson v. H. S. Halvorson Co. the court said, "We think there can be no question as to such jurisdiction." In Re Sjurson's Estate, 29 S. D. 566, 137 N. W. 341, we held that the county court had the equitable power, in the course of administration of an estate, to construe a will so far as was necessary in order to administer the estate and distribute the same to the persons entitled thereto. Rev. Code 1919, § 3470, provides that the county court in making a decree of distribution must name the persons and the proportions or parts of the estate to which each shall be entitled. In order to ascertain the part to which a distributee is entitled, the county court can inquire into and determine the indebtedness of the distributee to the estate and order the deduction of the same from his share. Holden v. Spier, 65 Kan. 412, 70 P. 348; Stenson v. H. S. Halvorson Co., supra.

█ Respondents contend that the several witnesses who testified to the indebtedness of the sons to their father were incompetent to testify under the provisions of Rev. Code 1919, § 2717, subd. 2, which in substance provides that, in action by or against executors, etc., neither party to the action nor any person who has ever had any interest in the action, adverse to the party or to the intestate or testator, shall be allowed to testify against such other party as to any transaction whatever with or statement by the testator or intestate, unless called to testify thereto by the opposite party. As we have already stated, no proper objection was made

to any testimony, except in so far as it might relate to the $2,000 advanced to John Hornstra, but, had the proper objection been made, it should have been overruled. It has frequently been held by this court that this statute should be strictly construed so as not to be applied to any person or testimony not clearly within its provisions. Witte v. Koeppen, 11 S. D. 598, 79 N. W. 831, 74 Am. St. Rep. 826; Chapman v. Greene, 27 S. D. 178, 130 N. W. 30; Ekern v. Erickson, 37 S. D. 300, 157 N. W. 1062; In re Golder's Estate, 37 S. D. 397, 158 N. W. 734, 735; Hanson v. Fiesler, 49 S. D. 442, 207 N. W. 449.

Neither Edgar nor Ernest was a party to the action, nor did either of them testify to any transaction with their father that was adverse to any other party. No one is claiming any interest adverse to either of them and their testimony as to the statement made by their father to John in relation to the $2,000 advanced to him was not a statement in regard to any communication made to either Edgar or Ernest. In Hanson v. Fiesler, supra, we quoted with approval the construction placed on this section in Jones on Evidence (3d Ed.) § 786 (volume 4, The Blue Book of Evidence, § 786), as follows:

"The rule of the statute does not operate to close the mouth of the witness as to any matter of fact coming to his knowledge in any other way than through personal dealings with the deceased person, or communication made by the deceased to the witness in person."

The communication in regard to the $2,000 testified to by Ernest and Edgar was not a communication made to either of them, but a communication made to John, as to which neither Edgar nor Ernest was incompetent to testify.

▉▉▉ Peter was not a party to the action, nor was the interest he had in the estate, if he had any interest, adverse to his creditors or to the trustee in bankruptcy. On the contrary, any interest they might have could only be derived through and under him. His testimony, therefore, that the money he received from his father was received on the agreement and understanding that he should pay it back, and, if he was unable to do so, it should be taken out of his share of the estate, was not the testimony of one who either had or ever had had an interest in the subject of the action adverse to the judgment creditors or to the trustee in bankruptcy. The fact

that his testimony might result in defeating the claim of the judgment creditors to a lien on an interest which he was supposed to have in his father's estate, and that of the trustee in bankruptcy to the possession of such interest, no more precluded him from giving such testimony than he would be precluded from denying that he ever bought or received goods for which he might have been sued. It is only if his interest in the subject of the action (which was his father's estate, Ekern v. Erickson, supra) is adverse to them that he would be precluded from testifying.

Judgment and order denying a new trial are reversed.

SHERWOOD, P. J., and POLLEY and BURCH, JJ., concur.

CAMPBELL, J., concurs in result.