# IN RE ESTATE OF GRIMES

(204 N.W.2d 812)

(File No. 11124. Opinion filed February 22, 1973)

Stephens, Riter, Mayer & Hofer, Pierre, and Brost & Brost, Presho, for appellants Dan Parish and Lewis E. Grimes.

Donald L. Heck, Kadoka, and Martens, Goldsmith, May, Porter & Adam, Pierre, for respondent John W. Grimes.

BIEGELMEIER, Presiding Justice.

This appeal involves proceedings in the probate[1] of the will of Everett C. Grimes who died in 1970. By his will dated April 6, 1967, which was admitted to probate, he bequeathed some farm machinery and equipment to one son and the rest of his real and personal property in equal shares to his three sons, John, Lewis and Lornce Grimes.

In the fall of 1967 Lewis Grimes decided to purchase real estate referred to as the Gilchrist land. The land did not represent sufficient security for him to borrow the whole purchase price from the Federal Land Bank. As his father had helped one brother in a similar deal, Lewis had discussions with his brothers, the decedent, a land bank agent and an attorney that either his father's land be used as security for the loan to Lewis or the loan be made to his father with his land as security and the proceeds then loaned by his father to Lewis so he could complete the purchase of the Gilchrist land.

The transaction ended with his father executing a note to the Land Bank for $35,000 and mortgaging 2240 acres of his land to secure the loan. The proceeds of the loan were turned over to Lewis who assumed the obligation of repaying the loan. Lewis admitted "This agreement I made with my father [was] to repay this loan." He contended however that he owed the $35,000 to the Federal Land Bank and not to his father.

The Inventory and appraisement of the property of the estate included the 2240 acres of real estate stated to be subject to a mortgage on which the balance due on the date of decedent's death was $35,784.30. It also listed a loan to Lewis Grimes of $34,034.30 which together with stock[2] in the Federal Land Bank Association of $1,750 totals and balances the mortgage noted above.

---

1. The probate proceedings originated in the district county court, sometimes referred to as the probate court.

2. It is well known these loans are only made to stockholders in the local association; therefore, borrowers must purchase stock equal to 5% of the loan. The stock may be used to apply on the balance of the loan when it is paid.

During the probate, a Petition for Partial Distribution of the estate was filed by the executor, and, pursuant to a notice of hearing given to the three sons, the court entered a Decree of Partial Distribution in which the real estate included in the Land Bank mortgage was distributed in equal shares to John, Lewis and Lornce Grimes. This Decree made the share of Lewis' subject to his indebtedness to the estate of $35,784.30, set out in the Inventory. A proceeding to partition the real estate was commenced and notice of hearing the Petition was likewise given to the three sons.

The record shows that about a month after the Inventory had been filed Lewis and Lornce each executed assignments of their interests in the "real property" in the estate to one Dan Parish. These assignments were filed with the clerk of courts a few minutes before the hearing on the Petition for Partition. The court's Order of Partition states that in addition to appearances by the executor and his attorney, John W. Grimes appeared personally and by another attorney, Lewis and Lornce Grimes appeared in person and Dallas Brost appeared for assignee Parish. The Order further stated that no objection having been made that the real estate be partitioned in accord with SDCL 30-24, commissioners be appointed after a Decree of Distribution has been entered vesting title in the real estate in undivided one-third interests in each of the sons. In addition to this Order for Partition of real estate, the court entered an Order appointing commissioners for partition of real estate and a Decree of Partition. This Decree approved the report of the commissioners, vested title in separate parcels to each of the three sons and (as the Decree of Partial Distribution did) declared the real estate vested in Lewis subject to the lien of his indebtedness to the estate. Based upon his affidavit that as assignee of the interests of Lornce and Lewis he was a party in interest in the estate and entitled to appeal from the Decree of Partition, Parish, on June 11, 1971, by the same attorney, gave written Notice of Appeal from that Decree on both questions of law and fact to the circuit court. John Grimes likewise appealed. Both appeals were dismissed by the circuit court.

At that state of the record, on November 19, 1971, Lewis Grimes and assignee Parish filed a verified Petition in probate

court to amend the Inventory filed December 10, 1970, the Decree of Partial Distribution of March 25, 1971, and the Decree in Partition of April 15, 1971. The Petition alleged: (1) the Inventory was in error insofar as it showed Lewis was indebted to the estate in the sum of $34,034.30, as Lewis, by affidavit attached to the Petition, denied such debt; (2) the Decree of Partial Distribution was erroneous in showing the land subject to the lien for the aforesaid debt of Lewis to the estate when he claimed no such debt existed and the court should have distributed Lewis' share to Parish, and (3) the Decree in Partition divided the land between Lewis and Lornce Grimes rather than to Parish and repeats the claim that the Decree is erroneous in concluding the land subject to the lien.

At the hearing held on this Petition, John Grimes appeared individually as an heir and as executor of the estate in objection to the Petition. Motions to dismiss the Petition on the ground the court had no jurisdiction to grant the relief requested were overruled. The court, after hearing the evidence presented, denied the relief requested. Assignee Parish and Lewis Grimes appeal; Lornce does not appeal.

The evidence taken in the probate court and the briefs in this court cover a wide range of questions of law, but in the view we take of the record it is necessary to consider the much narrower questions presented.

The Notice of Appeal to this court states it is from the Order dated February 11, 1972, the Order denying relief requested in the Petition to amend the Inventory and two Decrees. The two Decrees were entered on March 25, and April 15, 1971. At those times, SDCL 30-35-1 provided:

"An appeal may be taken to the circuit court from a judgment, decree, or order of the county court:

*    *    *    *    *    *

(5) Against or in favor of directing the partition * * * of real property; * * *

(7) Refusing, allowing, or directing the distribution or partition of an estate, or any part thereof, of the payment of a debt, claim, legacy, or distributive share; * * *

(9) Any other judgment, decree, or order of the county court * * * affecting a substantial right in probate matters."

It is clear that this section allowed an appeal from the two Decrees—indeed an appeal taken to the circuit court from the Partition Decree of the district county court was dismissed. Those Decrees therefore are final and binding, the one because no appeal was taken and the other because the Order dismissing the appeal is in effect an affirmance of the Decree. SDCL 30-35-20. The statute (SDCL 30-35-19) then allowed the appeal to be, as the Parish appeal requested, on both law and fact, with trial de novo in circuit court. A decree, even though erroneous, is final and conclusive and binding on the heirs—not only as to claims they made but also as to claims they could have made. White v. White, 76 S.D. 503, 81 N.W.2d 606.

In re Schocker's Estate, 79 S.D. 11, 107 N.W.2d 295, held that when the circuit court on appeal had determined an issue on remand the county court had no authority to determine the issue anew. The effect of the dismissal is by statute an affirmance of the order and judgment and the issues therein settled and affirmed cannot be determined anew on remand. Both the appealed and unappealed Orders are final.

Notice of hearing the Petition for Partial Distribution on March 25, 1971, was given by mailing a copy to the three sons and posting as required by the court Order of March 5, 1971, but not to assignee Parish. Appellants call attention to SDCL 30-23-6, which states notice of application under § 30-23-5 must be given to "all persons interested in the estate". While this issue was not raised in the probate court and may not be presented for the first time on appeal, Fales v. Kaupp, 83 S.D. 487, 161 N.W.2d 855, we believe the record disposes of it. Dallas Brost appeared for assignee Parish at the partition hearing on January 14, 1971, and

was present at the hearing on the Petition for Partial Distribution, the record showing he there appeared for Lewis and Lornce Grimes. This resulted in one of the Decrees which made the interest of Lewis subject to his indebtedness to the estate.

On June 11, 1971, Brost signed the Notice of Appeal from the probate court Decree of Partition as attorney for assignee Parish and has been his attorney from the time of the first hearing in January 1971 to date in all these proceedings in the district county court, the circuit court and this court.

■ Generally notice to an attorney is notice to a client, and knowledge of an attorney is knowledge of, or imputed to, his client, and, more specifically, knowledge of, or notice to, the attorney for a litigant or party to a legal proceeding of matters arising in the course of the litigation or proceeding is ordinarily imputed to such litigant or party. 7 C.J.S. Attorney and Client, § 69a, p. 853, and § 69d, p. 865.[3]

The appearances noted and other appearances of Brost as attorney for Parish and Lewis Grimes indicate his knowledge of all these proceedings. Under these circumstances it could not be claimed the Decrees were taken against them through mistake, inadvertence, surprise or excusable neglect, nor is such claim made. See White v. White, 76 S.D. 503, 81 N.W.2d 606. It may not be amiss to mention in this connection that records in this court have shown assignee Parish is a circuit court reporter and not a stranger to court procedure.

Appellants' Petition was a request for retrial of the issues which were before the probate court at the time of two hearings, the claim then being that Lewis owed no debt to his father or the successor executor of his estate to support the lien. The court heard evidence on the Petition to amend the Decrees, and denied the Petition to amend.

---

3. Bunnell v. Holmes, 64 Colo. 345, 171 P. 365, where the court refused to set aside a judgment taken by default under service of summons by publication; the court held knowledge of his attorney of pendency of the action was imputed to the client. Accord: Brewster v. Hines, W. Va., 185 S.E.2d 513, and cf. Annotation 4 A.L.R.3d at 230.

■ Even assuming, for the sake of argument, that the court had authority to consider the Petition for a rehearing, on the record made it appears appellants' evidence supports the Decrees. In Hornstra v. Avon State Bank, 55 S.D. 513, 226 N.W. 740 (not cited by counsel), the court held oral testimony that money received by sons of deceased as advancements was not intended as a gift; that each such advancement was deductible as an indebtedness owed by the devisee which constituted a prior equitable lien against his distributive share even against the lien of judgment docketed against him. The court wrote:

> "money advanced or given to these sons * * * might have been either in the form of advancements or of simple indebtedness.
>
> "It is further contended that, since there is no proof in writing that the advances or loans of money were made as advancements, they cannot be so considered, and that, considered simply as indebtedness due from the several sons, the county court had no authority to set off such sums as against the distributive shares to which said sons would otherwise have been entitled. We think this contention cannot be sustained. In Stenson v. H. S. Halvorson Co., 28 N.D. 151, 147 N.W. 800, 803, L.R.A. 1915A, 1179, Ann.Cas. 1916D, 1289, under statutes identical with our own, this question was thoroughly considered, and it was there held that an indebtedness owed by an heir to the estate constituted a prior equitable lien against such heir's distributive share of the estate as against the lien of judgments docketed against it. While there are authorities to the contrary, the reasoning and holding in the case meet with our approval."

Holding that an executor could deduct the amount of an outlawed note (which is not involved here) from the share of a devisee, the Minnesota Supreme Court in In Re Lindmeyer's Estate, 182 Minn. 607, 235 N.W. 377, 378, wrote of the various theories:

"Some of the courts place the rule or doctrine upon retainer, others on advancement, others on set-off or assets in the hands of the distributee, and others that the representative has an equitable lien on the share of the distributee until the latter discharges the obligation which he owes the estate. One line of authorities rests upon the theory of the law, and it is an equitable one, that the indebtedness of a distributee of the estate should be regarded as assets of the estate already in his hands, and that his legacy or share is to that extent satisfied. It is said that it would be grossly inequitable to allow such distributee to obtain his full share of an estate while he is withholding that portion of the same that is already in his hands. Indeed the distributee cannot, in accordance with justice or good conscience, be entitled to be awarded and receive his share as long as he is a debtor to the estate and thereby has in his own hands a portion of the fund upon which the payment of his own share and the share of others depend. * * * Measured by moral standard and in accordance with good conscience, the debtor is still under obligation to pay his debt, although a recovery thereon under the law may be barred by the lapse of time.

"* * * Regardless of the reason given for the rule, it rests upon wholesome principles of right and justice, and we conclude that we should adopt the common-law rule which prevails in a majority of the states wherein the question has been considered."

That the transaction between Lewis and his father resulted in an obligation and indebtedness to the father which became an asset of the estate clearly appears.

■ The claim made that the court erred in not distributing the property to assignee Parish is also subject to the final decree doctrine above stated. In any event, the court had the right to give no effect to the assignment in order to enforce the lien and leave the parties to the assignment to their own recourse under it.

It appears the real and adverse question presented is the right of the executor to a lien on the share of Lewis Grimes and his successor-assignee Parish in the estate. Lewis and Parish have joined in their requests for relief, appear by the same counsel throughout the probate,[4] are both joint appellants here, and, as of now, have the same and not opposing interests. The Petition to amend the Inventory presents no further question.

We conclude the court did not err in denying the Petition to amend and the judgment is affirmed.

All the Justices concur.

4. Appellants' counsel, other than Brost, gave notice of appearance after the appeal was taken to this court.