287 N.W.2d 91 (1979)
In the Matter of B. E., B. L., and L. S. M., Alleged Dependent Children and Concerning B. M. and R. M.
Nos. 12558, 12571.
Supreme Court of South Dakota.
Argued May 15, 1979.
Decided December 31, 1979.
*92 Thomas J. Farrell of Willy, Pruitt, Matthews & Jorgensen, Sioux Falls, for appellant father, R. M.
Mary E. Leary of East River Legal Services, Sioux Falls, for appellant mother, B. M.; Peter Gregory of East River Legal Services, Sioux Falls, on brief.
Timothy J. McGreevy of Dana, Golden, Moore & Rasmussen, Sioux Falls, for respondent children.
Janice C. Godtland, Asst. Atty. Gen., Pierre, for respondent State of South Dakota; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.
HENDERSON, Justice.

ACTION
These two appeals are from the adjudicatory and dispositional hearings in which B.E., B.L., and L.S.M. were adjudged to be dependent children and appellants' parental rights were terminated. These appeals question the constitutionality of certain statutes, assert violations of substantive due process rights, and allege various evidentiary errors. For clarity and convenience appellants will be referred to as mother and father. The dispositional order permanently terminating both appellants' parental rights is reversed.

PROCEDURAL FACTS
On September 29, 1977, a petition was filed alleging that the children, B.E., B.L., and L.S.M., were dependent within the meaning of SDCL 26-8-6. That same day an order was entered appointing a guardian to take temporary custody of the minor children. A combined adjudicatory and dispositional hearing on the merits of the petition was concluded on January 19, 1978. *93 The children remained in the custody of the state following the trial. On May 19, 1978, the court entered its order of adjudication and decree of disposition finding the children dependent under SDCL 26-8-6 and terminating the parental rights of both appellants, naming the "Director of Service Administration" as guardian for purpose of adoption.

FACTS
The appellant parents were divorced February 4, 1977. Pursuant to the terms of the divorce, the mother was granted custody of the three minor children  B.E., B.L., and L.S.M., ages three, one, and one month respectively, under the supervision of a Court Services officer. The father was permitted visitation rights one evening and on alternating Saturdays and Sundays. He was not obligated to pay child support until one year after the entry of divorce so that he could pay delinquent bills which the parties had accumulated.
Several incidents occurring in August and September, 1977, prompted the removal of the three children from the mother's residence. The home was first visited on August 16, 1977, by Ms. Tracy, a Court Services officer, after receiving a complaint through the Department of Social Services. It was not until this time that the Court Services Department became aware of the provision in the divorce decree calling for supervision of the home. Ms. Tracy was met at the door by a babysitter. She testified that the house was unkempt, smelled, and the children appeared quite dirty. Approximately two days later, Ms. Tracy visited with the mother to discuss her problems. The mother indicated that she was concerned about the children and that she needed to get away for a period of time; however, no assistance was offered at that time.
On August 20, 1977, the children were left with a fifteen-year-old girl, unequipped to feed, bed, or clothe them. The police were contacted by a neighbor the following afternoon when the mother failed to return. The officer who responded to the call described the house and children as being extremely dirty. A social worker then removed the children and released them the following day to their grandmother. Shortly thereafter, the mother contacted Ms. Tracy stating that she had been under a great deal of strain and sought assistance in her attempt to adequately care for her children. She had considered the possibility of placing the youngest child for adoption with one of the relatives. The mother additionally contacted the Social Services requesting that the children be placed for approximately one month with that office. Testimony disclosed that Social Services offered her no assistance, indicating that they did not provide babysitting service to allow a mother vacation time away from her children. A social worker, Ms. Rollings, testified at the hearing that it was not uncommon to provide occasional daily foster care on an intermittent basis; however, this alternative was not suggested to appellant.
On September 15, 1977, the Department of Social Services again received a complaint about the mother's home. A social worker investigated and found a babysitter in charge. He stated that the home was filthy and in shambles. There was no bedding, mattresses were stained and odorous, dirty clothes were strewn about the house, garbage was piled high near the refrigerator, and dirty dishes were left in the kitchen sink. The children's clothing was extremely soiled and the youngest ran about without a diaper and smelled of urine. Flies were rampant and food was scarce. There was rancid hamburger on the kitchen table where two of the children were preparing to eat. A young teenage girl had been babysitting that week, although the mother dropped in occasionally during that time.
On September 17, two police officers had occasion to visit the appellant's residence pursuant to a call by two concerned teenage girls. Upon arrival, the officers found a hysterical six-year-old boy who had supposedly been left in charge of appellant's two older children. The officers testified that the house reeked with an intense, pervading odor of rotting food and urine; the toilet *94 was plugged and the bathtub was full of fetid water that attracted flies. The mother returned home while the officers were present, stating that she had been at her mother's home doing laundry.
In late September, appellant's brother picked up the two older children, washed them, and took them over to a sister's home to spend the night. The sister testified that she went to the home to get clothing for the children and described its state in similar terms. She contacted Ms. Tracy the next day, not knowing the whereabouts of her sister. Ms. Rollings picked up B.E. and B.L. on the evening of September 27, and placed them in a foster home. L.S.M., who was staying with a babysitter, was placed in the foster home two days later.
The mother contacted Ms. Rollings on several occasions to check up on her children while they remained in temporary custody of the Department of Social Services. Visitations were scheduled and the record reflects they went extremely well.
The father, upon discovering that there had been complaints about the care of the children, talked with Department of Social Services personnel and Court Services officers expressing his concern about the children and his desire to obtain custody. The record reveals that after the divorce, from February to August, 1977, he saw the children on three occasions. Although his visits were infrequent, the mother discouraged him from seeing the children, even to the extent of calling the police to prevent him from entering the home. He did, however, visit the children several times while they were in the foster home.
Pending the divorce, the father had custody of the children for two-week intervals during a six-month period. His grandmother testified that while he had the children, he took very good care of them, always making sure that they were properly clothed, fed, and washed. At the time of trial, he was gainfully employed, earned a sufficient income to provide for the children, and was making arrangements for the purchase of a new home. Ms. Rollings and children's counsel recommended to the court at trial that the mother's parental rights be terminated and that the children be placed in custody of the father under supervision.
On the basis of these facts the trial court found that: Neither parent appeared to have sufficient parental care and concern for the children to provide for them the necessary physical care and emotional support. The court concluded: (1) B.E., B.L., and L.S.M. are dependent children within the meaning of SDCL 26-8-6 and (2) the best interests of all three children would be served by terminating the parental rights of both parents.

ISSUES
The mother appeals this adjudicatory order and judgment on the grounds that: (1) The phrase neglected or dependent child, as defined in SDCL 26-8-6, is unconstitutionally vague and indefinite; (2) both SDCL 26-8-6 and SDCL 26-8-36 are violative of substantive due process in that neither section requires as a prerequisite to termination of parental rights a showing of a high and substantial degree of harm to the children, nor that less drastic alternatives be considered prior to resorting to termination; and (3) the trial court's finding that the children were dependent and neglected was not supported by the evidence. The father appeals on the grounds that: (1) The evidence was insufficient to support the findings of fact entered by the court, and (2) the court abused its discretion in terminating his parental right. The children also appeal asserting the court erred in terminating the father's parental rights.

DECISION

I
We first examine appellant-mother's contention that SDCL 26-8-6, defining neglected or dependent children, is unconstitutionally vague and overbroad. This court has repeatedly upheld the constitutionality of this statute. Matter of V.D.D., 278 N.W.2d 194 (S.D.1979); Matter of N.J.W., 273 N.W.2d 134 (S.D.1978); People in Interest of D.K., 245 N.W.2d 644 (S.D.1976); *95 Matter of D.T., 89 S.D. 590, 237 N.W.2d 166 (1975). We find no reason to deviate from our position on this issue and reaffirm the principles stated therein.

II
We disagree with the mother's contention that a high and substantial degree of harm to the child must first be established to satisfy substantive due process in termination proceedings. Due process requires a showing of a certain threshold of harm to justify termination, but does not mandate that a child be subjected to actual deprivation before such a determination is instituted. A termination proceeding is preventative as well as remedial. Waagen v. R.J.B., 248 N.W.2d 815 (N.D. 1976); In re Scarlett, 231 N.W.2d 8 (Iowa 1975). The best interests of the child remains the paramount consideration in these proceedings. SDCL 26-7-11; People in Interest of D.K., supra. Therefore, our position that the facts need only indicate by a clear preponderance of the evidence that potential harm to the child may result in allowing the parent-child relationship to continue, establishes the quantum threshold of harm to satisfy substantive due process in these proceedings. Matter of V.D.D., supra; People in the Interest of D.K., supra.
The mother also maintains that SDCL 26-8-6 and SDCL 26-8-36 are void of constitutional safeguards in that neither section requires that the state pursue less drastic alternatives prior to resorting to termination of parental rights. We are acutely aware that termination of parental rights is a drastic, final step that should be exercised with great caution. As this court stated in Ex parte Summers, 43 S.D. 617, 623, 181 N.W. 831, 833 (1921): "The rights of [a] natural parent are not to be set aside, except for strong and compelling reasons." Thus, while the statutes do not mandate that the court first impose the least restrictive alternative available, it is implicit that termination should only occur when circumstances dictate that in the best interests of the child, parental rights should be permanently severed as opposed to pursuing other remedial measures. We must be mindful of the fact that the needs of the child must take priority over the wishes of the parent. To mandatorily impose a less restrictive alternative in each instance as a prerequisite for termination would thwart this underlining principle in cases where immediate termination is the only viable means to insure that the best interests of the child are protected.
This is not to say that the parents are foreclosed from raising the argument that termination was not the least restrictive alternative available. When confronted with this issue, we must determine pursuant to the principle laid down in Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960), whether the court erred in concluding, based on the findings of fact resulting from the dispositional hearing, that no narrower or less restrictive means were available to provide for the best interests and welfare of the child other than to terminate the parental right. Matter of N.J.W., supra. SDCL 26-8-35 provides less intrusive measures which the court can consider as an alternative to terminating parental rights. If, on a review of the record, it appears that the state's compelling interest in the well-being and welfare of the children can reasonably be insured by less intrusive means, we must order that those alternatives first be implemented.

III
We next consider the mother's contention that the evidence was insufficient to support the court's findings of fact in adjudicating the children dependent and neglected under SDCL 26-8-6. The statute mandates that a petition for dependency and neglect be supported by a preponderance of the evidence. We cannot set aside the trial court's findings of fact unless they are clearly erroneous and we are, after a review of all the evidence, left with a definite and firm conviction that a mistake has been made. SDCL 15-6-52(a); In re Estate v. Hobelsberger, 85 S.D. 282, 181 N.W.2d 455 (1970).
*96 The trial court found that the mother, age twenty, was so extremely young and immature that she was unable to provide sufficient parental care and emotional support for the children. The evidence reflected that on repeated home visits by the police and social workers, the children were found extremely dirty, not properly clothed or fed, and left with inadequate sitters. The home was in complete disarray and filthy; it reeked with the intense pervading smell of urine, insects were thick, and rotting food was left in the open. The mother forsook her responsibilities by leaving the children for days at a time under these conditions. We disagree with the mother's argument that the court's findings were general, conclusory, and unfounded. We have carefully reviewed the record and are convinced that the evidence established by a clear preponderance that these children were dependent.
We next weigh the father's argument that the evidence was insufficient to support the trial court's findings of fact that he appears not to have sufficient parental care and concern for the children to provide the physical care and emotional support they need. He contends that, since he did not have custody of the children, he was incapable of controlling or realistically preventing a situation of neglect occurring in the mother's home. Evidence established that he was aware the children were in need but did not offer any financial assistance to alleviate their situation. Evidence also revealed that he saw the children infrequently in approximately a year's time, however, the evidence also reflects that the mother inhibited him from seeing the children. The mother never asked him for financial assistance nor was he ordered by the divorce decree to pay child support for one year. Although he was not a model father, the evidence produced at the hearing was not sufficient to support the court's findings that he was unfit to have custody of the children.
The record indicates that once he discovered complaints of neglect being waged against his ex-wife's care of the children, he contacted the Court Services Department and the Department of Social Services about obtaining custody of the children. He requested to visit, and did see the children while they were in temporary custody. At the time of trial, he was earning an income to adequately support the family and had paid off most of the bills required by the divorce decree. He testified that he was looking into purchasing a new three-bedroom home and would make adequate babysitting arrangements while he was at work. There was evidence that while he had custody of the children he tended to all their needs. There was no evidence indicating that he was ever abusive towards the children. In fact, Ms. Rollings of the Department of Social Services recommended that he have custody of the children under supervision of the Department.
Under the facts and circumstances presented here, we hold that there was not sufficient evidence under SDCL 26-8-6 to sustain an adjudication of dependency as to the father or that he lacked general parental ability to be denied custody of his children.

IV
We look finally to both appellants' contention that their parental rights should not have been terminated. Although we have concluded that the evidence was sufficient to support the finding that the children were dependent within the meaning of SDCL 26-8, we do not believe that the evidence adduced at the hearing is sufficient to support the termination of either the mother's or father's parental rights. We recognize that parents have a fundamental right to their children, but it is not an absolute one. In re K.D.E., 87 S.D. 501, 210 N.W.2d 907 (1973). At the same time, however, the parents' right to custody over their own children should never be disturbed except upon a clear showing against the parent of gross misconduct or unfitness, or of other extraordinary circumstances affecting the welfare of the child. Blow v. Lottman, 75 S.D. 127, 59 N.W.2d 825 (1953).
*97 It is most important to note that the petition for termination of parental rights was instituted on the basis of complaints received during a one-month period of time. The Department of Social Services made no concerted effort to work with the young mother to assist her in providing an adequate home life for the children. Ms. Rollings testified that during the time the children remained in temporary custody the Department felt that it was not worthwhile to try to work with the mother due to the number of contacts in such a short period of time. The action taken in this case appears to be in direct conflict with the philosophy of the agency as espoused by Ms. Rollings, namely, to try to keep families together by working with the natural parent whenever possible.
We make no attempt to propound a rule establishing a prerequisite of time and effort prior to taking action to terminate parental rights. Compelling circumstances may require a termination without delay. Yet, while the evidence supports the court's finding that the mother is unfit and too immature to rear the three young children at this time in her life, termination of her parental rights based on these complaints of neglect during a period of one month is unwarranted.
Having concluded that the record failed to support the court's finding of the father's parental unfitness to be denied custody, it was also error to terminate the mother's parental right when a less restrictive alternative was available for protecting the children's welfare. State intervention for the best interest of the child cannot be used merely to insure that the child has a better home or someone better to care for it. Blow v. Lottman, supra.
Insofar as the order of adjudication was based upon the father's conduct, it is reversed. Insofar as the order is based upon the mother's conduct, it is affirmed. The children are dependent within the meaning of the statute, thus the order of adjudication is affirmed. The decree of disposition terminating appellants' parental rights to the children is reversed. The case is remanded to the court for continuing disposition in accordance with SDCL 26-8-35 during which time the children remain adjudged dependent, with instructions that the court institute that available alternative which will serve the best interests of the children.
DUNN and FOSHEIM, JJ., concur.
WOLLMAN, C. J., and MORGAN, J., concur in part and dissent in part.
MORGAN, Justice (concurring in part, dissenting in part).
I join in the portion of the opinion that reverses the order terminating the father's parental rights. However, I would affirm the order terminating the mother's parental rights. As was so aptly stated in People in Interest of T.C., 278 N.W.2d 452, 454 (S.D. 1979): "The question before this Court `is not whether it would have made the same findings the trial court did, but whether on the entire evidence it is left with a definite and firm conviction that a mistake has been committed.'" I believe that the majority's reliance on Blow v. Lottman, 75 S.D. 127, 59 N.W.2d 825 (1953), is a mistake. That case has been considerably diluted by our opinions commencing with the Matter of K.D.E., 87 S.D. 501, 210 N.W.2d 907 (1973), and Matter of N.J.W., 273 N.W.2d 134, 137 (1978), where we pointed out that: "It is important to bear in mind that parents, natural or adoptive, have a fundamental right to their children. However, it is not an absolute or unconditional right. The State, as parens patriae, takes a necessarily strong interest in the care and treatment of every child within its borders." Our decision does not cut off the children from both natural parents.
I am authorized to state that Chief Justice WOLLMAN joins in this concurrence in part and dissent in part.