**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Larry COCHRAN, Defendant and Appellant.**

**No. 13009.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 8, 1980.

Decided Oct. 15, 1980.

LeAnn Larson Finke, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Gary R. Richards of Richards, Hood & Brady, P.C., Spearfish, for defendant and appellant.

FOSHEIM, Justice.

This is an appeal from an order of the circuit court dismissing appellant's application for a writ of habeas corpus. We affirm.

The defendant was charged with first degree rape in Meade County, South Dakota. Pursuant to the provisions of SDCL 15 26A 37,[1] the parties submitted a state-

---

1. When this appeal was taken, SDCL 15-26A 37 provided:

In lieu of the record as defined in § 15 26A–30, the parties may prepare and sign a statement of the case showing how the issues presented by the appeal arose and were decided in the trial court and setting forth only so many of the facts averred and proved or sought to be proved as are essential to a decision of the issues presented. If the statement conforms to the truth, together with such additions as the trial court may consider necessary to present the issues raised by the

ment of the issues presented on appeal and the facts essential to a decision on those issues.

According to the stipulated facts, the crime charged was allegedly committed within the confines of the Fort Meade Military Reservation. Prior to the preliminary hearing, appellant applied for a writ of habeas corpus to the circuit court in which he challenged the jurisdiction of the State of South Dakota to prosecute him, contending that the situs of the alleged crime was within the exclusive jurisdiction of the federal government. Specifically, appellant contends that a 1975 retrocession of exclusive federal jurisdiction to concurrent federal-state jurisdiction over the old Fort Meade Military Reservation was legally insufficient.

Exclusive jurisdiction over the Fort Meade Military Reservation was ceded to the United States by art. XXVI, § 18, cl. 5 of the South Dakota Constitution.[2] All political powers and jurisdiction over the military reservation not expressly retained by the state were thereby surrendered absolutely to the United States Government for exclusive use of the Army or Navy. *McMahon v. Polk*, 10 S.D. 296, 73 N.W. 77 (1897). The retrocession was conducted pursuant to 38 U.S.C.A. § 5007 (West) (now § 5012), which reads as follows:

> Partial relinquishment of legislative jurisdiction.–The Administrator, on behalf of the United States, may relinquish to the State in which any lands or interests therein under the Administrator's supervision or control are situated, such meas-

ure of legislative jurisdiction over such lands or interests as is necessary to establish concurrent jurisdiction between the Federal Government and the State concerned. Such partial relinquishment of legislative jurisdiction shall be initiated by filing a notice thereof with the Governor of the State concerned, *or in such other manner as may be prescribed by the laws of such State,* and shall take effect upon acceptance by such State. (Added Aug. 2, 1973, P.L. 93–82, Title III, § 302(1), 87 Stat. 195; Oct. 21, 1976, P.L. 94–581, Title II, § 210(e)(5), 90 Stat. 2865.) [Emphasis supplied.]

By Executive Order 75-7, dated September 29, 1975, the State of South Dakota accepted an offer from the Veterans' Administration for concurrent jurisdiction over federal enclaves under the Veterans' Administration control within South Dakota and directed that the State shall exercise concurrent jurisdiction with the Federal Government over all lands comprising the Veterans' Administrative Hospital at Fort Meade and other land. Appellant claims that failure to file the appropriate documents in the office of the Secretary of State and with the Register of Deeds of Meade County, pursuant to SDCL 1–1–1.1,[3] precludes concurrent federal-state jurisdiction over the situs of the crime. Executive Order 75-7, however, was attested by the Secretary of State and was file-stamped by both the Secretary of State and the Register of Deeds of Meade County.

■ Failure to file a map pursuant to SDCL 1-1-9 is further specifically claimed

---

appeal, shall be approved by the trial court and shall be the record on appeal.

This rule has since been modified and now appears as SDCL 15–26A–55.

2. S.D. Const. art. XXVI, § 18, cl. 5 provides:

> Fifth. That jurisdiction is ceded to the United States over the military reservations of Fort Meade, Fort Randall and Fort Sully, heretofore declared by the president of the United States: provided legal process, civil and criminal, of this state shall extend over such reservations, in all cases of which exclusive jurisdiction is not vested in the United States, or of crimes not committed within the limits of such reservations.

3. SDCL 1-1-1.1 provides:

> By appropriate executive order, the Governor may accept on behalf of the state, retrocession of full or partial jurisdiction, criminal or civil, over any roads, highways or other lands in federal enclaves excluding Indian reservations and federal enclaves outside the boundaries of an Indian reservation established for Indian use, within the state where such retrocession has been offered by appropriate federal authority. Documents concerning such actions shall be filed in the office of the secretary of state and in the office of the register of deeds of the county wherein such lands are located.

to be fatal to the transfer. That statute reads:

A map of any land acquired by the United States, under the provisions of this chapter, shall be filed and recorded in the office of the secretary of state and the evidence of the United States' title shall be recorded in the county wherein the land is situated as in other cases relating to the transfer of real property.

SDCL 1–1–9 by its language applies only to land acquired by the United States. Land which is the subject of a retrocession of jurisdiction is not "land acquired by the United States." Accordingly, we conclude that a retrocession of jurisdiction does not require that a map of the subject land be filed or recorded. Thus, all necessary documents were filed pursuant to South Dakota statutes.

Appellant contends that failure to state in Executive Order 75- -7 whether the jurisdiction being accepted by the state was civil, criminal, or both is fatally defective. The authority for the retrocession speaks of relinquishing "concurrent jurisdiction." 38 U.S.C.A. § 5007 (West) (now § 5012). The Executive Order of retrocession uses the same term "*jurisdiction*" as appears in the constitutional grant to the United States, art. XXVI, § 18, cl. 5 (emphasis supplied), without specifying whether that jurisdiction was civil, criminal or both. If, as appellant contends, the word "jurisdiction" is too vague to assume it includes criminal jurisdiction, then it logically follows that South Dakota's cession of simple jurisdiction likewise did not include criminal jurisdiction, and if criminal jurisdiction was not expressly ceded to the United States, it was by implication retained by South Dakota. Such a conclusion would be incompatible with our pronouncement in *McMahon v. Polk*, supra. The Executive Order, therefore, can be fairly construed as an acceptance by South Dakota to share the same jurisdiction that it previously ceded exclusively to the United States. There apparently was never any question whether that constitutional cession included criminal jurisdiction.

Finally, appellant claims the Administrator of Veterans' Affairs was not vested with authority to offer concurrent jurisdiction to the State of South Dakota over the situs of the alleged crime. Appellant notes that in 1944, pursuant to an Act of Congress,[4] the Department of the Army transferred the Old Fort Meade Military Reservation to the Veterans' Administration. The Veterans' Administration later declared that part which included the situs of the alleged crime to be unneeded surplus for a Veterans' Hospital. In essence, appellant contends that due to a subsequent transfer of such surplus area to the Department of Interior, Bureau of Land Management, any offer of concurrent jurisdiction should have been made by the Secretary of the Interior rather than the Administrator of Veterans' Affairs. Respondent counters that such transfer was for management purposes only and that any federal interagency ownership questions must be addressed and adjudicated in federal court. In our view, we need not address that issue. It was neither urged nor decided in the trial court. The agreed statement of the record submitted pursuant to SDCL 15–26A–37 [5] is devoid of any facts addressing that issue, and it is not mentioned therein as an issue. By the terms of SDCL 15–26A–37,[6] that statement "shall be the record on appeal" and the issue may not be presented for the first time on appeal. *In Re Estate of Grimes*, 87 S.D. 187, 204 N.W.2d 812 (1973); *Fales v. Kaupp*, 83 S.D. 487, 161 N.W.2d 855 (1968). By the record presented on appeal, appellant must affirmatively establish the existence of error, and he has failed to do so. *In Re Estate of Assmus*, 254 N.W.2d 159 (S.D. 1977).

Since the Executive Order appears valid on its face, we must conclude from the record that the State of South Dakota has

---

4. Act of June 22, 1944, Pub.L. No. 346, 58 St. at 284.

5. See Note 1, supra.

6. Id.

acquired concurrent criminal jurisdiction where the crime allegedly was committed. The order of the circuit court dismissing the application for a writ of habeas corpus is affirmed.

All the Justices concur.