**The PEOPLE of the State of South Dakota, In the Interest of B.A.R., a Minor Child.**

**No. 14086.**

Supreme Court of South Dakota.

Argued Oct. 24, 1983.

Decided Feb. 15, 1984.

Janice Godtland, Asst. Atty. Gen., Mark V. Meierhenry, Atty. Gen., on brief, Pierre, for appellee.

Richard Braithwaite, Sioux Falls, for M.R.

Carly Abbott, Sioux Falls, for B.A.R.

FOSHEIM, Chief Justice.

M.R. (mother) appeals a decree terminating parental rights in her son B.A.R. (child). We affirm in part and remand in part.

The child was born November 24, 1978. On September 18, 1980, the Department of Social Services (DSS) filed a petition seeking termination of the mother's parental rights. Paternity is unacknowledged. On January 15, 1981, the court, upon stipulation, found B.A.R. to be a dependent child within the meaning of SDCL 26–8–6, and

the child was placed under the guardianship of DSS. A dispositional hearing took place in November and December 1981 after which the court entered a decree terminating the mother's parental rights. After appeal and remand, another dispositional hearing took place on January 14, 1983. The trial court again terminated the mother's parental rights, giving DSS authority to place the child for adoption.

The mother cites five claims of error. The first concerns the sufficiency of the evidence to support termination. After appeal of the first termination decision, we remanded for disposition under the "clear and convincing" evidentiary standard required by this court in *People in Interest of S.H.*, 323 N.W.2d 851 (S.D.1982), and the United States Supreme Court in *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). At the hearing on remand the court received evidence of developments since the earlier termination. The mother now contends the trial court ostensibly reached the first disposition on a preponderance of the evidence standard and because the evidence introduced at the last hearing indicated progress on the part of the mother, the evidence could not have satisfied the "clear and convincing" standard. We disagree.

■ There is ample evidence in the record of physical child abuse, of lack of normal bonding between mother and child, and general lack of parental responsibility. Although the mother had improved in many respects by the time of the dispositional hearing on remand, none of the evidence demonstrates that she had become a better parent. The evidence introduced at the earlier dispositional hearing was, in our opinion, sufficiently "clear and convincing" to support a termination decision. It was not mitigated by the subsequent showing.

Appellant next urges that her parental rights were improvidently terminated because the first disposition was based in part on evidence received at a hearing without actual notice to her. The first dispositional hearing occurred on November 18,

1981, while the mother was wandering about the United States. She had voluntarily chosen not to maintain contact with the court or her attorney and thereby failed to learn that her court-appointed counsel had been replaced and that a dispositional hearing had been set.

The new attorney's inability to locate and meet with the mother made representation impossible. The court consequently relieved him of his appointment at the beginning of the first dispositional hearing. Coincidentally, the attorney received a call upon return to his office informing him that the mother was undergoing drug therapy in Minneapolis. The attorney returned to the hearing and, at the court's direction, resumed representation of the mother. The matter was then continued to December 24, 1981, to give the attorney an opportunity to study the transcript of the portion of the hearing he had missed and to permit him to cross-examine witnesses and introduce additional evidence. The mother returned to South Dakota and testified at the December 24 hearing.

■ Although an argument can be made that the mother had constructive notice of the hearing through her attorney, *In re Estate of Grimes*, 87 S.D. 187, 204 N.W.2d 812 (1973), we need not reach this issue. Even without notice, appellant was not prejudiced. The trial court took great care to accommodate her interests. Not only did her counsel represent her during the balance of the first hearing after learning her whereabouts, but the hearing was then adjourned to give the mother an opportunity to testify and to cross-examine all witnesses against her.

Except for five weeks, the child had been in foster care continuously for fourteen months prior to the November hearing. His interest in the prompt resolution of his future warranted holding the hearing in the mother's absence. She was wanted on criminal auto theft and false personation charges. Her departure from the jurisdiction and her failure to maintain contact with relatives, attorney, or the court justified the court in not continuing the matter until the mother should return to South Dakota at some unforeseeable future date. If the mother was at all injured by the lack of notice, it was her own doing. She had voluntarily broken off contact with all who knew her.

■ As a related issue, the mother maintains that her attorney's absence from the first part of the dispositional hearing wrongfully deprived her of counsel. The United States Supreme Court has determined, however, that there is no constitutional right to counsel in a proceeding to terminate parental rights. *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), reh'g denied, 453 U.S. 927, 102 S.Ct. 889, 69 L.Ed.2d 1023 (1981). Although SDCL 26–8–22.1 creates a right to be represented by counsel at every stage of the proceedings, there is no absolute duty on the part of the court, absent a request, to provide that counsel for the parent. *See* SDCL 26–8–22.2. When the mother's first attorney withdrew in her absence, the court appointed a replacement on its own motion. Because this appointment was not mandated by request, the court was exercising proper discretionary authority both in appointing the second attorney and in permitting him to withdraw from the case briefly during the first dispositional hearing. Even if the temporary absence of counsel were an abuse of discretion, the abuse was remedied when the attorney was given an opportunity to study the transcript of the testimony he had missed, cross-examine witnesses, and supplement the record.

■ Appellant argues that her parental rights were wrongfully terminated because rehabilitation of the family unit was frustrated by conduct of the State acting as legal guardian. The evidence suggests, however, that if there was lack of opportunity to demonstrate rehabilitation of the mother-son relationship, the fault was largely, if not wholly, due to the behavior of the mother. The child was placed in foster care in September 1980 after he had suffered physical abuse on several occasions. The mother stipulated to the de-

pendency of the child and took him into her care again on January 21, 1981. On March 10, 1981, the mother requested that the child return to foster care because she could not handle him. She was asked a month later whether she would like the child back, but she replied that she was not ready. The mother occasionally cancelled her weekly visits with her child, and in June 1981 she called DSS to report that she had moved to Minneapolis.

The mother's last visit with the child was in August 1981, after which DSS prohibited further contact. She was not heard from again until the morning of the first dispositional hearing when her attorney learned that she was participating in a drug treatment program in Minneapolis.

After entering the drug program, the mother did not seek visits with her child. There is no evidence that the mother made any effort to see B.A.R. from the time she entered the drug program on June 25, 1981, until the third dispositional hearing in January 1983. During this time the social worker sent several letters requesting information from the mother. The mother refused to supply any information.

The mother argues that because she could not visit her child, she could not practice her parenting skills and thus demonstrate that she was competent to have parental responsibility for her child. Physical contact with the child was not, however, necessary to give an indication that the mother was accepting greater responsibility. She could have demonstrated improved parenting potential by showing an interest in her child and successfully completing drug therapy.

For her last issue, the mother challenges the court's failure to make a finding on the availability of a less restrictive alternative than termination of parental rights. It is settled law that a trial court must not terminate a party's parental rights when a less restrictive alternative is available. *People in Interest of L.A.*, 334 N.W.2d 62 (S.D.1983); *People in Interest of S.R.*, 323 N.W.2d 885 (S.D.1982); *Matter of B.E.*, 287 N.W.2d 91 (S.D.1979). Although the trial court stated in open court and in its memorandum decision that it considered termination to be the least restrictive alternative, it did not make reference to this in its findings of fact. SDCL 15–6–52(a) requires that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall ... find the facts specially and state separately its conclusions of law thereon..." The statute further provides that "[i]f an opinion or memorandum of decision is filed, the facts and legal conclusions stated therein need not be restated but may be included in the findings of fact and conclusions of law by reference." The trial judge made no reference to the memorandum decision's discussion of less restrictive alternatives in his findings of fact. Because it is clear from the record that the trial court decided to terminate on the basis of the absence of a less restrictive alternative, we remand for the limited purpose of entering a specific finding of fact on the availability of a less restrictive alternative, with or without new evidence in the court's discretion.

Except as to that remand, we affirm on all issues.

DUNN and MORGAN, JJ., concur.

WOLLMAN and HENDERSON, JJ., concur in part and dissent in part.

WOLLMAN, Justice (concurring in part, dissenting in part).

I would affirm on all issues without remanding for the entry of a finding on the least restrictive alternative issue. Where the record is clear, as it is in this case, that the trial court consciously reached its decision to terminate parental rights because no lesser restrictive alternative was available, no useful purpose would be served by a remand for the entry of a formal finding to that effect. Were the remand only for the purpose of the performance of a ministerial act—that of couching in a different legal document and perhaps in slightly different words that which the trial court has already expressed—one could accept it as innocuous, if unnecessary. Couched as it

is, however, the remand invites, if not compels, the mother to request a new evidentiary hearing, the denial of which or the grant and unsatisfactory outcome of which will result in another appeal to this court.

HENDERSON, Justice (concurring in part, dissenting in part).

As in the *Interest of S.L.H.*, 342 N.W.2d 672 (S.D.1983), I would again affirm the trial court in toto, thus joining a termination of parental rights but hereby deviate from the remand aspect of the majority opinion. I spiritually join the concurrence in part-dissent in part writing of Justice Wollman, in this regard: I vote to simply remand to the trial court to thereupon enter a judgment nunc pro tunc which would allude to Settled Record 75–76 wherein Judge Hurd specifically stated in his decision that termination was the only alternative available to the court consistent with the best interests of the child. "Nunc pro tunc" is a phrase applied to acts allowed to be done after the time when they should be done, with a retroactive effect; i.e., with the same effect as if regularly done. *People v. Manieri*, 4 Misc.2d 567, 569, 148 N.Y.S.2d 546, 548 (1955). "Nunc pro tunc" judgment is a judgment entered to make the record speak the truth and the function of such entry is to correct the judicial records insofar as they fail to record a judgment by the court; where the court has acted and its action has not been recorded, an entry "nunc pro tunc" is proper and fully authorized. *State v. Durham*, 49 Ohio App.2d 231, 233–34, 360 N.E.2d 743, 746 (1976). "Nunc pro tunc" means "now for then" and when applied to entry of a legal order or judgment, it normally refers, not to a new or de novo decision, but to the judicial act previously taken, concerning which the record is absent or defective, and the later record-making act constitutes but later evidence of the earlier effectual act. *Briseno v. Perry*, 417 So.2d 813, 814 (Fla. App.1982). Therefore, no further evidence need be taken. This case has been remanded once and we need not remand again, for we may control the remand by the procedure I suggest. Let repose of this litigation set in like sleep in the night.

The mother had been a heavy drug abuser for many years (marijuana, alcohol, cocaine, speed). This little boy had been in foster care over half of his life. As in *S.L.H.*, B.A.R. suffered from maternal deprivation, neglect, and abuse. This consisted of, but was not limited to, a skull fracture, beatings with a spatula, bruises over the entire body, being placed in a bathtub of hot water long enough to cause a reddened area from the waist down the lower trunk, and diapers not being used so that the child defecated on the floor. Similar to *S.L.H.*, the child had very poor motor development and appellant mother refused to recognize the problem. Not unlike the mother in *S.L.H.*, this mother wanted absolutely no interference by any agency, counselor, or physician into the life of herself and this little boy. Considering that various services had been offered to her since April 1980, she had ample opportunity to change her attitude and life to become a good mother. As late as January 1983, she avowedly was not ready to have her son returned to her custody. In a sense, the little boy waited for two and one-half years for his mother to take care of him. She would not come forward and mother the child. Must he languish in foster care, year after year, while the candle of his young life burns and grows dim? His needs are of today and not tomorrow. *S.L.H.*, 342 N.W.2d 679, 681 (Henderson, J., concurring in part, dissenting in part). Judge Hurd judiciously terminated her parental rights. *In re B.E.*, 287 N.W.2d 91 (S.D.1979); *In re V.D.D.*, 278 N.W.2d 194 (S.D.1979); *In re D.K.*, 245 N.W.2d 644 (S.D.1976).