LARSON, Respondent v. LARSON, Appellant

(235 N.W.2d 906)

(File No. 11653. Opinion filed December 5, 1975)

Brady, Kabeiseman, Light & Reade, Frank J. Brady, Steve M. Johnson, Yankton, for plaintiff and respondent.

Goetz, Hirsch, Haar & Blackburn, John P. Blackburn, Yankton, for defendant and appellant.

WINANS, Justice.

Our concern in this action is twofold: the possible abatement of an action for divorce when one party to that action dies in the course of the proceedings on the one hand and the trial court's capacity to enter a *nunc pro tunc* decree in such situations on the other hand. In this situation it· is our decision that the divorce action abated with the death of the defendant, Verlyn G. Larson,

and that the trial judge exceeded his powers in entering a *nunc pro tunc* decree several months after the defendant's death apparently awarding a divorce and certain properties to the plaintiff-wife, Margaret J. Larson.

Margaret and Verlyn Larson were married at Vermillion, South Dakota, in April of 1961. This marriage produced no children but apparently generated considerable conflict between the parties. On August 8, 1973, Margaret Larson commenced an action to divorce Verlyn Larson. Trial was held before the Honorable James Adams at Vermillion on April 25, 1974. Prior to the hearing it was stipulated between counsel that the actual divorce grounds would not be contested and that the trial court would not take fault into consideration in the property division. Respondent offered her proof of divorce grounds without cross-examination or contradiction. Appellant offered no proof with reference to these grounds. Nearly the entire trial was concerned with the nature, value and extent of the defendant-appellant's properties. At the conclusion of this one-day hearing Judge Adams suggested that each counsel prepare a memorandum proposing an acceptable property division and award. He then continued: "But there will be a divorce. The only thing for me to decide now is the financial arrangements and I'll do that after five days from now so you will have the decision within about two weeks from now." No memorandum had been issued by the court by May 20th when Appellant's counsel requested that such be withheld until there could be an evaluation of new medical information on Mr. Larson's physical condition. On June 3rd counsel withdrew this request but almost immediately Judge Adams left South Dakota for a five-week session at judges' college in Nevada, taking the Larson file with him. While in Nevada he dictated a memorandum on the case, sent it to his court reporter in South Dakota for transcription, then revised the language of the original draft and again sent it to his court reporter. Defendant-appellant Verlyn Larson died at Sacred Heart Hospital in Yankton on July 5th at the age of 42. Interestingly, the death certificate lists his marital status as "divorced." Several days later, at the request apparently of Plaintiff-Respondent's counsel, the trial court executed its "memorandum decision" which had been dated July 1, 1974, but which had been heretofore unsigned, and

sent it to both counsel with a cover letter dated July 11, 1974. In that letter Judge Adams states:

> "I enclose a copy of My Memorandum Decision in the above entitled action. Its significance is primarily historical . . ."

The Court had already been advised of Verlyn Larson's death.

The first of Judge Adams' three memorandum "decisions" is divided into six sections, each with its own caption. The sixth section, captioned "(6) *Decision*", says nothing of the granting of a divorce but relates only to the division of the property. The first section, however, reads as follows:

> "(1) *A Divorce Must Be Granted.*
>
> "Both grievous mental and physical suffering have been established by Mrs. Larson's evidence. Any salvage prospects for this childless marriage are too marginal to be seriously considered. Divorce is the only viable alternative that remains. The factual details contained in the record will not be recounted here."

It thus appears that neither in his statement at the close of trial where he speaks in the future tense nor in his "memorandum decision" did the Court ever explicitly state that a divorce in fact was granted.

On August 30, 1974, Judge Adams held a hearing on Plaintiff's motion to substitute Verlyn Larson's executor as defendant. On September 10, 1974, the Court entered a "memorandum decision" denying the motion and refusing the plaintiff's proposed *nunc pro tunc* decree, stating:

> "It appears that when a trial court has determined questions of fact and directed the entry of a judgment, and the parties are entitled to have it entered while both parties are living, after the death of a party such a judgment may be entered nunc pro tunc as of the date within the lifetime of the deceased at the instance of persons whose rights are affected thereby, for the purpose

of determining and fixing property rights or for the purpose of legalizing proceedings taken in the belief that the parties to the divorce were in fact divorced.     *     *     *

"It is my view that this point was not reached in these proceedings before Verlyn G. Larson died. Therefore, even though the verdict was in, there were judicial acts remaining that cannot be done 'now for then'."

A rehearing was held on September 26, 1974, and the Court issued its third "memorandum decision". In this memorandum Judge Adams reversed himself, saying:

"It must be acknowledged that findings of fact in the usual form are not required by any South Dakota statute see SDCL 15-6-52(a). What our statutes do require is that there be a 'decision' upon issues of fact (SDCL 15-4-3). In defining 'verdict' our statutes specifically include a finding upon facts by a judge (SDCL 2-14-5(30) [sic]). There is nothing that prohibits use of a memorandum decision for this purpose. Supplementing a specific decision with 'the usual forms' neither enhances or detracts from the effectiveness of decisions.

"Although the practice may vary, this court has always considered it's (sic) memorandum decisions as final determinations within the meaning of SDCL 15-4-3. It looks upon formal findings of fact and conclusions of law as little more than dangerous nuisances.     *     *     *

"The verdict or decision upon all issues of fact had been reached and reduced to writing before the defendant died. Of course, the writing was signed after the death; the court at that time realized that serious questions existed as to its efficacy. But no statute requires signing the decision     *     *     *."

The Court thereupon entered Plaintiff's proposed findings of fact and conclusions of law granting Margaret Larson a divorce and dividing the property of the couple and on December 11, 1974, Judge Adams signed a *nunc pro tunc* divorce decree which was filed with the clerk the following day.

Judge Adams having disqualified himself from the case, Judge Hertz presided over a December 20, 1974 hearing on a motion for a rehearing which motion was denied. A subsequent motion for a new trial and one for a modification of the divorce decree were also denied.

It is undisputed that nothing had been filed with the clerk of courts nor had anything been sent to counsel for either party by Judge Adams nor in fact had any opinion, decision or memorandum been signed by him purporting to dissolve the Larson marriage bonds prior to the death of Mr. Larson. Such being the situation no later than July 6, 1974, did the divorce action survive and had the trial court power to pronounce Margaret and Verlyn Larson no longer husband and wife by reasons of a civil decree of divorce? To both questions we must answer in the negative.

▮▮▮ The bond uniting man and woman as husband and wife is a personal one and our law provides that it is terminated in only two ways—death or divorce. (SDCL 25-4-1). Death having come in advance of any judicial decree the bond was thereby severed. Thereafter there was no bond upon which the decree could work. The law in this state is as it is in many others: in a suit for divorce where the death of one of the parties to the suit occurs before a decree of divorce has been issued the action abates and the jurisdiction of the court to proceed with the action or to make further determination of property rights, alimony, costs or attorney's fees is terminated. *Bevelle v. Bank of America Nat. Trust & Savings Ass'n*, 1947, 80 Cal.App.2d 333, 181 P.2d 730; *Williams v. Williams*, 1945, 146 Neb. 383, 19 N.W.2d 630; *LeTarte v. Malotke*, 1971, 32 Mich.App. 289, 188 N.W.2d 673; *Sahler v. Sahler*, 1944, 154 Fla. 206, 17 So.2d 105.

This being our law, we next must ask whether Judge Adams' attempt to remedy the situation by issuing a *nunc pro tunc* divorce decree some five months or more after the defendant's death was effective. In so doing we note a striking similarity between the instant case and *Sahler v. Sahler*, supra. In *Sahler* a hearing on a petition for divorce was held on July 12, 1943. At the conclusion of the testimony the Chancellor made verbal statements indicating that a decree of divorce should be granted,

but without specifying in whose behalf it issue. The Chancellor then asked the attorneys to draw a decree which could include a property division. Preparation of the written decree was delayed pending agreement of the parties on the property division. On July 28th of that same year the plaintiff died. On August 17, 1943, the Chancellor entered a *nunc pro tunc* decree of divorce as of July 12th. The Florida Supreme Court there stated:

"* * * [C]onstruing the announcements made by the Court at the conclusion of the hearing, in the aspect most favorable to the plaintiff, the most that can be said of them ·is that the Chancellor had announced certain things that he desired to be incorporated in the final decree when it was prepared and entered. The Chancellor stated that he thought a divorce should be granted, but he didn't say to whom it should be granted. He stated that he thought the property should be divided in certain proportions, but he didn't make any division of the property, and he expressed the wish that the parties, through their counsel, would get together and agree on a division. By no rule of construction, or any process of reasoning, known to the writer, could such oral pronouncements by the Chancellor be construed to be a final decree; however, it is the opinion of this writer that had the Chancellor announced a decree, that such decree would not have been effective until it had been reduced to writing, signed by the Judge, and recorded in the Chancery Order Book as provided in Section 62.16, Florida Statutes 1941, F.S.A. In the case at bar no decree had been signed by the Chancellor, or filed for record, or recorded, and not even a definite pronouncement had been made as to all of the things the final decree would contain if and when it was signed and recorded, prior to the death of the plaintiff.

"The writer is of the opinion that the weight of authority in this country relative to the authority of Courts to enter 'Nunc pro Tunc' decrees in divorce suits is to the effect that a 'Nunc pro Tunc' decree cannot be entered where one of the parties to a divorce dies before the rendition of a Decree.

"In Annotation 3 A.L.R., page 1421, it is stated,

'Where a party to a divorce suit dies before the rendition of a decree, none can be entered nunc pro tunc'. [citations omitted]

'Thus where complainant in divorce died after submission, it was error to enter a decree for him, nunc pro tunc'."

A more recent case, from the state of Michigan, is of similar nature and holding. In *LeTarte v. Malotke,* supra, a trial in a divorce action was settled in open court on the morning of December 16, 1969. After the property settlement had been read into the record the Court said: "A judgment of divorce will enter upon presentation of the proper form incorporating therein the complete property settlement which, as I understand, has been dictated upon the record between counsel?" Subsequently a docket entry was made by the clerk indicating the plaintiff had been granted a judgment of divorce and the judge signed the entry. On December 20, 1969, Robert LeTarte died. A final judgment of divorce had not been given to the judge for signing. The personal representative of the deceased asked that a *nunc pro tunc* judgment of divorce be granted. The Michigan Court of Appeals held that the oral statement of the trial judge at the end of trial that a judgment of divorce will be entered was prospective and did not constitute a rendition of judgment. It also held that since there was no rendition of a judgment before Mr. LeTarte's death the action abated when he died and a *nunc pro tunc* decree would be improper. *See* also *Heck v. Bailey,* 1918, 204 Mich. 54, 169 N.W. 940, a Supreme Court opinion to the same effect and cited as authority in *LeTarte,* supra. There, as here, judicial acts remained to be done at defendant's death.

In the instant case Appellant invokes SDCL 15-4-3 which provides:

"If a party die after a verdict or decision upon any issue of fact, and before judgment, the court may nevertheless render judgment thereon.   *   *   *"

While this might seem to save Appellant's case we must first determine the meaning of "verdict or decision". In *Bunnell v. Kindt,* 1968, 83 S.D. 377, 159 N.W.2d 923, we said that "verdict" or "other decision" refers to findings upon the facts. Verdict refers to the finding by the jury and decision refers to the finding by the court. In *Bunnell* we explicitly stated that decision does not mean the memorandum decision of the trial court in which the judge indicates the conclusions to which he has come on the facts. In fact, we also stated there, the memorandum decision of the trial court may not be used as a substitute for findings of fact. Therefore, in spite of the existence of the trial court's unsigned memorandum "decision" (opinion) at the time of Verlyn Larson's death and in spite of the trial judge's prospective oral pronouncement at the end of trial that a divorce would be granted, we are convinced that no decision, within the meaning of SDCL 15-4-3, had been made before the marriage bond was dissolved by death which could justify the post mortem entry of judgment.

It is the opinion of this Court that the suit for divorce abated upon the death of Verlyn Larson and that at his death Margaret Larson became his widow. Because there were judicial acts still to be completed the trial judge's *nunc pro tunc* decree was invalid and because no decision as contemplated by our law had been made SDCL 15-4-3 did not apply.

Reversed.

All the Justices concur.