#28565-a-DG
**2019 S.D. 7**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

CHARLOTTE M. ANDERSEN,                    Plaintiff and Appellee,

    v.

ARTHUR S. ANDERSEN,                       Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MICHELLE K. COMER
Judge

\* \* \* \*

CASSIDY M. STALLEY
THOMAS E. BRADY of
Lynn, Jackson, Shultz & Lebrun, P.C.          Attorneys for defendant
Rapid City, South Dakota                      and appellant.


MICHAEL K. SABERS
TRAVIS B. JONES of
Clayborne, Loos & Sabers, LLP                 Attorneys for plaintiff
Rapid City, South Dakota                      and appellee.

\* \* \* \*

ARGUED ON
NOVEMBER 13, 2018
OPINION FILED **01/23/19**

#28565

GILBERTSON, Chief Justice

[¶1.]    Charlotte Andersen sued for divorce from her husband, Arthur Andersen.  At a scheduled bench trial, the parties informed the circuit court that all issues associated with the divorce, including property division, had been stipulated to.  The parties read the stipulation into the record and the court orally bound the parties to the stipulation.  Most notably, the parties agreed that the judgment and decree of divorce would be entered *nunc pro tunc*, or that it be retroactively applied, to March 1, 2018, and apply retroactively to December 31, 2017.  Before the decree could be entered, Art passed away.  The circuit court later dismissed the divorce action, holding it no longer had jurisdiction to enter a decree of divorce because Art's death had dissolved the marriage.  Art's estate appeals the court's order.  We affirm.

**Facts and Procedural History**

[¶2.]    Arthur and Charlotte were married on October 16, 2004.  After ten years of marriage, Charlotte filed for divorce on January 27, 2015, alleging irreconcilable differences.

[¶3.]    A bench trial was held on November 15, 2017.  At that time, the parties informed the court that they had reached a stipulation on all issues related to the divorce.  The court asked that the stipulation be read into the record and requested that the parties "pay very specific attention, and if you can't hear, ask for clarification, because at the end [of the reading,] I'm going to ask both of you if this is, in fact, your agreement, and I will bind you to this agreement orally today."

-1-

[¶4.]     The parties claimed the stipulation agreement covered all material facts, the grounds for divorce, the division of property, alimony, and attorney fees. The agreement asked that a "decree of divorce [be] entered in favor of both parties against the other on the ground of irreconcilable differences." Most notably, however, the agreement asked that the decree of divorce not be entered until March 1, 2018, and be *nunc pro tunc* to December 31, 2017.

[¶5.]     After the reading of the stipulation into the record, the court canvassed the parties to confirm the agreement:

> **The Court**: Thank you. Ms. Andersen, is this, in fact, your agreement?
>
> **Ms. Andersen**: Yes, it is.
>
> **The Court**: And do you agree to be bound by this agreement?
>
> **Ms. Andersen**: Yes, I do.
>
> **The Court**: And, therefore, do you agree to waive your right to a trial that was set for today?
>
> **Ms. Andersen**: Yes.
>
> **The Court**: Thank you. Mr. Andersen, is this, in fact, your agreement?
>
> **Mr. Andersen**: Yes.
>
> **The Court**: And do you agree to be bound by the terms of this agreement?
>
> **Mr. Andersen**: Yes.
>
> **The Court**: And do you agree to give up the trial that was set for today?
>
> **Mr. Andersen**: Yes.

[¶6.]     On November 20, 2017, the parties filed a written stipulation that was signed by both parties. The written stipulation was nearly word-for-word to what was read orally to the circuit court and it noted that all terms "were agreed to in open [c]ourt on November 15, 2017." The stipulation also provided that "[t]he

parties agree that such Judgment and Decree of Divorce shall be entered *nunc pro tunc* on December 31, 2017. Such Judgment and Decree of Divorce shall be filed on March 1, 2018, or as mutually agreed." The parties filed affidavits consenting to the jurisdiction of the circuit court and to a judgment and decree of divorce from each other on the grounds of irreconcilable differences.

[¶7.] On February 20, 2018, Art passed away before the judgment and decree of divorce was signed and entered by the circuit court. On February 23, 2018, Charlotte filed a motion to dismiss pursuant to SDCL 25-4-1 and requested an emergency hearing. To respond to Charlotte's motion Art's sister Tena Haraldson was appointed special administrator of Art's estate. Haraldson filed a suggestion of death with the circuit court and moved to substitute herself, as special administrator of Art's estate, in place of Art in the divorce action.

[¶8.] On March 1, 2018, Haraldson submitted a proposed judgment and decree of divorce to the circuit court requesting that the court sign it *nunc pro tunc* to December 31, 2017. Haraldson also filed a corresponding motion and brief in support of the motion. A motions hearing was held on March 13, 2018. The circuit court granted Charlotte's motion to dismiss, relying on this Court's holding in *Larson v. Larson,* 89 S.D. 575, 235 N.W.2d 906, 907 (1975), "that death abates jurisdiction of this Court" in a divorce action.

[¶9.] Art's estate appeals the circuit court's order, raising the following issues:

> 1. Whether the circuit court erred in holding that it could not enter a judgment and decree of divorce *nunc pro tunc* after Art's death when the parties had previously adopted a stipulated divorce agreement.

2.      Whether a stipulated property settlement is enforceable as a contract independent of the entry of a divorce decree after a party's death in a divorce action.

## Standard of Review

[¶10.]      On appeal, a circuit court's "[c]onclusions of law are given no deference and are reviewed de novo." *Zwart v. Penning*, 2018 S.D. 40, ¶ 8, 912 N.W.2d 833, 836 (quoting *Surat Farms, LLC v. Brule Cty. Bd. of Comm'rs*, 2017 S.D. 52, ¶ 12, 901 N.W.2d 365, 369).  We review a circuit court's findings of fact for clear error.  *Id.*

## Analysis & Decision

*1.      Whether the circuit court erred in holding that it could not enter a judgment and decree of divorce* nunc pro tunc *after Art's death when the parties had previously adopted a stipulated divorce agreement.*

[¶11.]      This Court has addressed the definition and purpose of a *nunc pro tunc* judgment:

> '*Nunc pro tunc*' judgment is a judgment entered to make the record speak the truth and the function of such entry is to correct the judicial records insofar as they fail to record a judgment by the court; where the court has acted and its action has not been recorded, an entry '*nunc pro tunc*' is proper and fully authorized.  '*Nunc pro tunc*' means 'now for then' and when applied to entry of a legal order or judgment, it normally refers, not to a new or de novo decision, but to the judicial act previously taken, concerning which the record is absent or defective, and the later record-making act constitutes but later evidence of the earlier effectual act.

*In re B.A.R.*, 344 N.W.2d 90, 94 (S.D. 1984) (citations omitted) (italics added).

[¶12.]      Art's estate argues that a judgment and decree of divorce can be entered *nunc pro tunc* following the death of a party under the facts of this case. The estate claims this is because, at the time of Art's death, all issues had been

-4-

stipulated to, adjudicated, and accepted by the circuit court. In response, Charlotte relies on SDCL 25-4-1, which provides that: "[m]arriage is dissolved only: (1) By the death of one of the parties; or (2) By the judgment of a court of competent jurisdiction decreeing a divorce of the parties. The effect of such judgment is to restore the parties to the state of unmarried persons." She asserts that under SDCL 25-4-1, her marriage to Art ended when Art passed away, and after that time, the circuit court lacked jurisdiction to enter a *nunc pro tunc* decree of divorce. Charlotte also claims that this Court's decision in *Larson* controls and that Art's death abated jurisdiction of the circuit court to adjudicate the divorce action.

[¶13.]     In *Larson*, this Court addressed the issue whether a circuit court has the power to enter a *nunc pro tunc* decree of divorce when one party to the divorce action dies during the course of proceedings. 89 S.D. at 576, 235 N.W.2d at 907. There, Wife filed a divorce action against Husband in 1973; a trial was held in 1974. *Id.* Before the trial, the parties orally stipulated between counsel that the grounds of divorce would not be contested and that fault would not be taken into consideration for property division. *Id.* At the conclusion of trial, the judge asked each counsel to prepare memoranda proposing an acceptable division of property. *Id.* The judge then stated: "But there will be a divorce. The only thing for me to decide now is the financial arrangements and I'll do that after five days from now so you will have the decision within about two weeks from now." *Id.*

[¶14.]     After trial, a motion from one of the parties and a five-week absence of the judge for a judicial training delayed the entry of the decree of divorce. *Id.* Before the decree was entered, Husband passed away. *Id.* Ultimately, the trial

court entered a *nunc pro tunc* order granting Wife a divorce. *Id.* at 579, 235 N.W.2d at 909. We reversed, stating "that the suit for divorce abated upon the death of [Husband] and that at his death [Wife] became his widow." *Id.* at 911. We reasoned that because no final decision as to the divorce had been made under South Dakota law, there were still judicial acts to complete, so the division of property and the entry of the *nunc pro tunc* divorce decree was invalid. *Id.*

[¶15.]        Art's estate argues that the facts in *Larson* are distinguishable from this case. It notes that in *Larson,* the parties could not reach an agreement on the division of property, so they went to trial. At the end of trial, the judge in *Larson* asked counsel to prepare memoranda proposing an acceptable property division because those issues had not yet been decided. Therefore, at the time Husband died, the division and award of property still remained an issue in the case. Here, however, in Art's estate's view, all issues in the divorce, including the grounds of divorce and division of property, had been stipulated orally to the circuit court, acknowledged by the court, placed in writing, and signed by the parties. Thus, the estate avers that there were no judicial acts left to be completed, and that a *nunc pro tunc* order could have been entered by the circuit court.

[¶16.]        Although *Larson* features different factual circumstances, the central holding controls the result here. In *Larson* and in this case, the circuit court had not completed all of the necessary judicial acts to grant a divorce. Without reaching that terminal point, the intervening death of a spouse ends the marriage by operation of law and deprives the circuit court of the authority to grant a divorce— much less a divorce *nunc pro tunc* to a date before the party's death. The fact that

the final judicial act was forestalled in *Larson* by contested property division issues rather than the agreed-upon passage of time in this case is inconsequential.

[¶17.] The estate's position ignores the paramount importance and finality of a judgment. SDCL 15-6-54(a) provides that "'Judgment' as used in this chapter includes a decree and means the *final determination* of the rights of the parties in an action or proceeding. A judgment shall not contain a recital of pleadings, the report of a referee, or the record of prior proceedings." (Emphasis added.) Webster's Dictionary defines *final* in a number of ways, including as something that is: (1) "not to be altered or undone"; (2) "of or relating to a concluding court action or proceeding": (3) "coming at the end; being the last in a series, process, or progress"; and (4) "of or relating to the ultimate purpose or result of a process."

[¶18.] Here, the parties' agreement as to the terms of the divorce and property division was orally placed on the record in circuit court, acknowledged by the court, memorialized in writing, and signed by the parties. It provided for the circuit court's jurisdiction to enter a judgment and decree of divorce on March 1, 2018, *nunc pro tunc* to December 31, 2017. The circuit court orally bound the parties to the agreement. But regardless of the comprehensiveness of the parties' agreement, it was in no way final. After the stipulation was entered into the record, the parties, and especially the circuit court, had the power to alter or even undo the agreement. Most importantly, the agreement by itself did not have the power to accomplish the ultimate purpose of this litigation: to end the marriage "[b]y the *judgment* of a court of competent jurisdiction decreeing a divorce of the parties" under SDCL 25-4-1.

[¶19.] The parties' stipulation agreement and the words of the court binding the parties to the agreement were not final. The important and final judicial act of actually entering a judgment and decree of divorce was left to be completed before Art's death. Art's death ended the marriage and abated the jurisdiction of the circuit court to enter a *nunc prop tunc* decree. The circuit court did not err in refusing to enter a decree of divorce *nunc pro tunc*.

> 2. *Whether a stipulated property settlement is enforceable as a contract independent of the entry of a divorce decree after a party's death in a divorce action.*

[¶20.] Art's estate argues that even if we hold that the circuit court did not err, the parties' stipulation is still enforceable on its own as a valid contract. Charlotte counters that her and Art's divorce was a condition precedent to the enforceability of the terms of the stipulation as a contract.

[¶21.] SDCL 53-1-2 provides that the "[e]lements essential to existence of a contract are: (1) Parties capable of contracting; (2) Their consent; (3) A lawful object; and (4) Sufficient cause or consideration." SDCL 20-2-4 defines a condition precedent as "one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed." This Court has expounded on the nature of a condition precedent:

> A condition precedent is a contract term distinguishable from a normal contractual promise in that it does not create a right or duty, but instead is a limitation on the contractual obligations of the parties.
>
> A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor. If the condition is not fulfilled, the right to enforce the contract does not come into existence.

*Jennings v. Rapid City Reg'l Hosp., Inc.*, 2011 S.D. 50, ¶ 8, 802 N.W.2d 918, 921 (quoting *Johnson v. Coss*, 2003 S.D. 86, ¶ 13, 667 N.W.2d 701, 705-06).

[¶22.]     Art's estate claims that the stipulation agreement meets all the elements of a contract. It notes that both parties were capable of contracting because the circuit court canvassed the parties as to their capabilities during trial. Each party stated that they were "of firm mind" and "sign[ed] the stipulation free of duress or compulsion." Art's estate asserts that the lawful object of the contract was not only a divorce, but also the division of property. It cites SDCL 25-2-10[1] and SDCL 25-2-13[2] for the proposition that a married couple may enter into a transaction of property from one to another. It also states that Art's death did not render the lawful object of property division a nullity. Finally, Art's estate points to the terms of the stipulation as proof of sufficient cause or consideration. If the decree of divorce and stipulation would have been executed, Charlotte would have received an equal share of the marital property, including a $550,000 equalization payment.

[¶23.]     Because we agree with the circuit court's conclusion that Art's death deprived it of jurisdiction to act, we express no opinion regarding the enforceability,

---

1.    SDCL 25-2-10 provides:

> Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might, if unmarried, subject, in transactions between themselves, to the general rules which control the actions of persons occupying confidential relations with each other, as prescribed by law.

2.    SDCL 25-2-13 provides that "[a] husband and wife cannot by any contract with each other alter their legal relations, except as to property . . . ."

in any subsequent action, of the stipulated property settlement agreement as an independent contract.

[¶24.]		KERN, JENSEN, and SALTER, Justices, concur.