#29811, #29812-PJD
**2022 S.D. 38**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

RAPID CITY JOURNAL,                                    Applicant,

    v.

THE HONORABLE CHAD R. CALLAHAN,
South Dakota Fourth Judicial Circuit
Magistrate Judge,                                      Respondent.

* * * *

ORIGINAL PROCEEDING

* * * *

JON E. ARNESON
Sioux Falls, South Dakota                    Attorney for applicant.


JASON R. RAVNSBORG
Attorney General

PAUL S. SWEDLUND
Solicitor General
Pierre, South Dakota                         Attorneys for respondent.

* * * *

CONSIDERED ON BRIEFS
JANUARY 10, 2022
OPINION FILED **06/22/22**

DEVANEY, Justice

[¶1.] This matter concerns the Rapid City Journal's (Journal) applications for alternative writs of prohibition and mandamus and corresponding applications for permission to commence original prohibition and mandamus proceedings against the Honorable Chad Callahan, magistrate judge. The Journal alleges that its right to access Gary Cammack's criminal court file was violated when Judge Callahan entered an order sealing Cammack's court file prior to the expiration of the condition that he obey all laws for six months. The Journal further asserts that Judge Callahan could not enter an order that had the effect of suspending imposition of sentence without a probation condition. After reviewing the Journal's applications, we directed the Journal to address on what basis it has standing to apply for its requested relief and directed Judge Callahan to detail the procedural history of the matter and identify the authority upon which the court sealed Cammack's court file.

[¶2.] Having now reviewed the parties' submissions, we conclude that while the Journal does not have standing to challenge the sentence imposed by the magistrate court, it does have standing to challenge the magistrate court's seal order. We therefore examine the merits of the Journal's claim that the magistrate court violated its right to access Cammack's court file.

### Factual and Procedural Background

[¶3.] In response to this Court's directive, Judge Callahan has provided the following procedural history. On January 18, 2020, Cammack was arrested for and charged with speeding and first offense driving while under the influence in Meade

County. Because of a conflict of interest, the Pennington County State's Attorney's Office prosecuted the action. Cammack initially pled not guilty, and thereafter, multiple status hearings were held. Although a jury trial was scheduled, the State and Cammack entered into a plea agreement after a pre-trial conference on June 10, 2021. The agreement provided that Cammack would plead guilty to careless driving and speeding, pay fines and costs, and not violate any laws for a period of six months. The agreement also contemplated that Cammack would request a suspended imposition of sentence. At a change of plea hearing on June 29, 2021, Judge Callahan accepted Cammack's guilty plea and granted a suspended imposition of sentence on the conditions that Cammack pay fines and costs and not violate any laws for six months. All of these proceedings were open to the public, and the court filings were likewise accessible to the public during the several months while these proceedings were occurring.

[¶4.] On October 1, 2021, Cammack's attorney sent an email to the Meade County Clerk of Courts noting that Cammack's criminal case was still designated as a "pending" case and asking what steps needed to be taken to have the case sealed. Cammack's attorney explained in the email that he thought the judge had ordered an immediate seal of the court file when granting the suspended imposition of sentence. The clerk replied that the notes from the court proceeding did not show that Judge Callahan ordered an immediate seal. The clerk further explained that Odyssey (South Dakota's electronic filing system) showed the seal date would be December 29, 2021.

[¶5.] Counsel for Cammack then sent an email to the prosecutor asking whether he would object to a modification of the court's order suspending the imposition of sentence so that the case could be immediately sealed. The prosecutor did not object, and counsel for Cammack sent an email to Judge Callahan and the prosecutor, and copied the clerk of courts, asking whether the court would be willing to grant an immediate seal. After receiving Cammack's request, the clerk advised that no "Judgment" had been filed in the case. Judge Callahan responded that he would grant the request for an immediate seal, assuming the fines and costs had been paid. The prosecutor then indicated he would "follow up on the judgment."[1] Judge Callahan thereafter signed and filed an order on October 4, 2021, sealing the court file. The seal order identified that Cammack had "observed all the conditions imposed by the [c]ourt." On this same date, presumably to rectify the fact noted by the clerk of court that a written order suspending the imposition of sentence had not been entered, Judge Callahan also entered a written order suspending the imposition of Cammack's sentence. However, this October 4, 2021 order contained the same condition initially ordered by the court that Cammack "obey all laws for six (6) months."

---

1.     The clerk of court, the prosecutor, and Judge Callahan (and his counsel in this writ proceeding) all mistakenly referred to the document containing the court's order suspending the imposition of sentence as a "judgment." The document is also improperly titled as a "judgment" and uses language that improperly lists terms of a "sentence" that are instead "conditions" of the suspended imposition of a sentence. *See* SDCL ch. 23A Appendix of Forms (providing an example in Form 24 of an order suspending imposition of sentence). Under the express terms of SDCL 23A-27-12.2, a court suspending the imposition of sentence does not enter a judgment of guilt. Thus, in this opinion, we refer to any document improperly titled as a "judgment" by its proper designation—an order suspending the imposition of sentence.

[¶6.] In early October 2021, the Journal became aware of Cammack's criminal case and secured copies of the documents relating to the case that had been filed in Odyssey before the seal order took effect. The dispositional notes in the Odyssey file showed that the court's suspended imposition of sentence contained two conditions: 1) that Cammack pay the fines and costs on the date of his plea and sentencing hearing (June 29, 2021); and 2) that Cammack violate no laws for a period of six months. This information caused the Journal to question why the magistrate court's sealing of the court file occurred prior to the expiration of the six-month period. On October 15, the Journal sent an email to the prosecutor and Cammack's defense counsel requesting information regarding the court's authority to prematurely seal the file. Cammack's attorney explained that Judge Callahan had amended the order suspending the imposition of sentence to remove the obey all laws provision.[2]

[¶7.] According to the Journal's statement of facts in its verified applications for alternative writs of mandamus or prohibition, the Journal received, upon request, further documentation from Cammack's counsel. The Journal received Judge Callahan's order sealing the court file entered on October 4, 2021, a copy of

---

2. Although Cammack's attorney further advised the Journal that, in his view, the intent of the plea agreement was that the case would be sealed at the time of sentencing, in the email exchange referenced above among counsel and the clerk of courts, Cammack's counsel acknowledged that this intention may not have been made known at the plea and sentencing hearing, at which another attorney appeared with Cammack. The procedural history submitted by Judge Callahan provides that the plea agreement presented to the court included an obey all laws for six months provision. Such a condition is consistent with the oral order the court entered at the hearing, as reflected in the dispositional notes recorded in Odyssey.

the arrest document, and a copy of the emails exchanged among counsel and Judge Callahan that led to the order sealing the court file. However, the Journal asserted in its verified applications that its "questions regarding the existence of [the seal] order" have "gone unanswered" by Judge Callahan and the prosecution.[3]

[¶8.]    On November 1, 2021, the Journal requested, in its application for an alternative writ of prohibition and for permission to commence an original prohibition proceeding against Judge Callahan, that this Court enter a writ of prohibition barring the magistrate court from entering or enforcing the order granting Cammack a suspended imposition of sentence without a probation condition and prohibiting the court from enforcing the corresponding seal order. The Journal similarly requested in its application for an alternative writ of mandamus and permission to commence an original mandamus proceeding that this Court direct the magistrate court to unseal Cammack's court file and rescind any order to the contrary and to rescind any order that removes the probation condition.

[¶9.]    After reviewing these applications, this Court issued an order on November 22, 2021, directing the Journal to address "the grounds for its standing to request either a writ of prohibition barring Respondent from granting a suspended imposition of sentence without requiring a term of probation, or a writ of prohibition

_____

3.    In the procedural history related to this Court by Judge Callahan, he indicated that after consultation with his presiding judge, he did not respond to the Journal's request because the case had been sealed. The Journal has indicated in its response to Judge Callahan's procedural history that although Judge Callahan has referred to signing both the suspended imposition of sentence and the order to seal on October 4, the Journal has only been provided a copy of the seal order.

prohibiting [Judge Callahan] from enforcing its order to seal [Cammack's] court file."[4]  We further directed Judge Callahan "to submit a response detailing the procedural history of the proceedings and his authority to seal [Cammack's] court file prior to the expiration of the timeframe set forth in any dispositional order, or final order filed by [the court]."  Also, Judge Callahan was directed to "state whether any term of probation remains in effect under the terms of any dispositional order, or final order filed by [the court]."  The parties have submitted their responses, and we now address the following issues:

1.      Whether the Journal has standing to request either a writ of prohibition preventing the magistrate court from granting or enforcing an order suspending imposition of sentence that does not contain a term of probation as a condition or a writ of mandamus directing the rescission of any such order.

2.      Whether the Journal has standing to request either a writ of prohibition preventing the magistrate court from enforcing its order sealing Cammack's court file or a writ of mandamus directing that the court rescind such order and unseal the court file.

3.      Whether the magistrate court had authority to seal Cammack's court file prior to the expiration of the timeframe set forth in the governing dispositional order.

---

4.      This Court's directive for further briefing referred only to the Journal's standing to seek a writ of prohibition (the counterpart of a writ of mandamus).  *See* SDCL 21-30-1.  On further review, it appears that the Journal's applications for writs of prohibition and mandamus overlap in the context of the relief being sought with respect to both the court's sentencing order and its order sealing the court file.

## Analysis and Decision

[¶10.] "Under Article V, § 5 of the South Dakota Constitution, this [C]ourt has authority to issue, hear and determine any original or remedial writs." *Dacy v. Gors*, 471 N.W.2d 576, 578 (S.D. 1991). "[A]n applicant for a writ of prohibition must show that he or she has no 'plain, speedy and adequate remedy in the ordinary course of law' available to them." *Cummings v. Mickelson*, 495 N.W.2d 493, 495 (S.D. 1993) (quoting SDCL 21-30-2). Further, "[t]o prevail on a writ of mandamus or prohibition, [p]etitioners must show 'a clear legal right to performance of the specific duty sought to be compelled and the [respondent] must have a definite legal obligation to perform that duty.'" *Cheyenne River Sioux Tribe v. Davis*, 2012 S.D. 69, ¶ 13, 822 N.W.2d 62, 66 (citation omitted).

> **1.      *Whether the Journal has standing to request either a writ of prohibition preventing the magistrate court from granting or enforcing an order suspending imposition of sentence that does not contain a term of probation as a condition or a writ of mandamus directing the rescission of any such order.***

[¶11.] In its application for an alternative writ and permission to commence an original prohibition action, the Journal asserts that the magistrate court had no authority to grant a suspended imposition of sentence without a probation condition. In its view, "probation is a necessary and essential component of any suspended imposition of sentence" because SDCL 23A-27-12.2 provides that the court may "suspend the imposition of sentence *and place the defendant on probation for such period and upon such terms and conditions as the court may deem best*." (Emphasis added.) In response to this Court's directive that the Journal address its

standing to assert such a challenge, the Journal argues that it has standing because the news media and the public have an "interest in the proper administration of justice" and "an inherent right to have its republic government . . . function as the law requires it to function." Judge Callahan contends that the Journal is a third party with no standing to challenge the sentence he imposed or the conditions of that sentence, and he further argues that the term "may" as used in SDCL 23A-27-12.2 vests a sentencing court with broad discretion as to whether, or under what terms and conditions, a defendant is placed on probation.

[¶12.]     A writ of prohibition "arrests the proceedings, administrative or judicial, of any tribunal, corporation, board, or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board, or person, or are without or in excess of the powers of authority conferred by law upon such tribunal, corporation, board, or person." SDCL 21-30-1. A "person beneficially interested" may seek a writ of prohibition. SDCL 21-30-3. This Court has not explained what is meant by the phrase "beneficially interested"; however, it is clear that the Journal is not a person *beneficially* interested in the sentence a court imposes as a result of a defendant's criminal conduct.

[¶13.]     In fact, the Journal appears to concede that it does not have an interest in the resolution of the underlying criminal matter. It acknowledges that it "does *not* allege standing to insinuate itself into a criminal case to interfere with the administration of justice, *per se*." Rather, in the Journal's view, its "standing derives directly from the press and public's right to assert and protect lawfully endowed rights of *access to public records*." (Emphasis added.)

[¶14.]     Whether the Journal has standing to seek a right of access to Cammack's court file implicates an entirely different inquiry than whether the Journal has standing to challenge a sentence, or a suspension or modification thereof, that a defendant receives. In regard to a citizen's standing under Article III of the United States Constitution to challenge a defendant's criminal sentence, federal courts have concluded that no such standing exists because "a non-party lacks a judicially cognizable interest in a criminal defendant's sentence[.]" *United States v. Stoerr*, 695 F.3d 271, 277 (3d Cir. 2012) (cleaned up) (citation omitted); *see also Whitmore v. Arkansas*, 495 U.S. 149, 156, 110 S. Ct. 1717, 1723, 109 L. Ed. 2d 135 (1990). The Massachusetts Supreme Court has similarly concluded on state law grounds that a crime victim could not challenge the conditions of probation imposed on a defendant because the victim does not have a "judicially cognizable interest in the proceeding and lacks standing to challenge the sentence." *H.T. v. Commonwealth*, 989 N.E.2d 424, 425 (Mass. 2013).[5] Because the Journal is not a person beneficially interested in Cammack's criminal proceeding, it does not have standing to request writs of prohibition or mandamus challenging the magistrate court's sentencing decision.[6]

---

5.     While Article VI, § 29 of the South Dakota Constitution provides certain rights to crime victims, including the right to provide input to the court in sentencing proceedings and to be informed of the sentence, disposition, incarceration, or release of the defendant, it does not provide victims a right to challenge the sentence imposed.

6.     Although it is unnecessary to address the merits of the Journal's argument given its lack of standing, we note that the Journal's argument relating to a sentencing court's ability to grant a suspended imposition of sentence without requiring a condition of probation is misplaced. Here, the court did in fact

(continued . . .)

> **2.** ***Whether the Journal has standing to request either a writ of prohibition preventing the magistrate court from enforcing its order sealing Cammack's court file or a writ of mandamus directing that the court rescind such order and unseal the court file.***

[¶15.]     As to the magistrate court's order sealing Cammack's court file, the Journal claims that it has standing to challenge such order and obtain relief in the form of a writ of prohibition or a writ of mandamus because this Court has previously recognized that the media has a right of access to court proceedings and thus standing to request such writs. Judge Callahan does not appear to dispute that the Journal has standing to request writs of prohibition or mandamus related to whether the October 4, 2021 seal order violated the Journal's right of access.

[¶16.]     In *Sioux Falls Argus Leader v. Miller*, we examined whether the Argus Leader, "a nonparty to the underlying lawsuit, has standing to challenge the gag order[,]" *see* 2000 S.D. 63, ¶ 6, 610 N.W.2d 76, 80, that barred "certain conduct [the court] believed would inhibit both the State's and the defendants' rights to fair and impartial proceedings that may eventuate in a trial[,]" *see id.* ¶ 3. We noted that "[t]he United States Supreme Court has previously determined that the First Amendment protects the right to receive information and ideas." *Id.* ¶ 7. We also recognized that "[o]ther courts have held that news agencies have standing to challenge court orders in an effort to obtain information or access to judicial proceedings, though the agencies are neither parties to the litigation nor directly restrained by those orders." *Id.* ¶ 8. In light of this authority, the Court concluded

---

(. . . continued)
impose a condition that resulted in a probationary period during which Cammack was directed not to violate any laws for a period of six months.

that the Argus Leader had standing to challenge the validity of the gag order "because the order, though not directed at [the Argus Leader], restricts some of the sources to which it may turn or has turned for information about the underlying criminal action" and that if a violation of the Argus Leader's right to receive information and ideas exists, "the injury falls within the zone of interests protected by the First Amendment." *Id.*

[¶17.]    So too here, the Journal has a right to obtain and access criminal court files, and if Judge Callahan sealed Cammack's court file when a condition of his suspended sentence had not yet been satisfied, the court's order necessarily violated the Journal's right to access. Therefore, the Journal has standing to challenge the validity of Judge Callahan's October 4, 2021 seal order. The Journal has also made the necessary showing to seek a writ from this Court because the Journal's request to the magistrate court for access to Cammack's court file was denied, and the Journal has no other plain, speedy, or adequate remedy in the ordinary course of law in the event the magistrate court's seal order violated the Journal's right to access. *See Miller*, 2000 S.D. 63, ¶ 5, 610 N.W.2d at 80.

> ### 3.    *Whether the magistrate court had authority to seal Cammack's court file prior to the expiration of the timeframe set forth in the governing dispositional order.*

[¶18.]    Judge Callahan contends that he had the authority to enter the order sealing Cammack's court file on October 4, 2021, because Cammack was not on probation on that date, or on any date prior. He further asserts that the condition that Cammack obey all laws for six months is not probation, but rather a "condition of sentence." In response, the Journal claims there is no distinction between a

"condition of sentence" and "probation" as Judge Callahan uses the terms because regardless of whether Judge Callahan placed Cammack on formal supervised probation or imposed a condition for the suspended imposition of sentence, SDCL 23A-27-14 requires that Cammack complete "all conditions" before Judge Callahan could discharge and seal the matter.

[¶19.] The question whether Judge Callahan had the authority to enter the October 4, 2021 seal order is resolved by the statutes governing the ability of a criminal defendant to obtain a suspended imposition of sentence. SDCL 23A-27-12.2 provides that the court "may, without entering a judgment of guilt, and with the consent of the defendant, suspend the imposition of sentence and place the defendant on probation for such period and upon such terms and conditions as the court may deem best." Only when a defendant has completed "all conditions imposed pursuant to § 23A-27-12.2[,]" *see* SDCL 23A-27-14, may the court discharge the defendant and seal the file in accord with SDCL 23A-27-17.

[¶20.] Here, Judge Callahan suspended the imposition of Cammack's sentence on the condition that he pay all fines and costs and obey all laws for six months. Thus, contrary to Judge Callahan's view, the court did in fact impose a suspended imposition of sentence that included a probationary period wherein certain conditions must be met. *See* SDCL 23A-27-18.3 (setting forth various conditions of probation that may be imposed, including the two imposed by the court here). Nothing in SDCL chapter 23A-27 restricts the term "probation" to a scenario involving only formal supervision by a court services officer. *See, e.g.*, SDCL 23A-27-12.1 (providing certain requirements when a court places a defendant "on

probation *to the court services department*" (emphasis added)); SDCL 23A-27-14 (amended in 2020 to account for both felony and misdemeanor discharges wherein either a court services officer assigned to the case or a defendant, who is not on supervised probation, may bring to the attention of the court that the conditions imposed on the suspended imposition of sentence have been satisfied). Thus, the word "probation" in SDCL 23A-27-12.2 can include a period in which a defendant, who is not under the formal supervision of the court services department, must nevertheless comply with the conditions the court imposes.

[¶21.]       Importantly, however, even though Judge Callahan originally imposed a condition that Cammack obey all laws for six months, he retained the authority under SDCL 23A-27-20.1 to modify the terms of Cammack's suspended sentence by shortening or terminating the probation period previously imposed. Therefore, when presented with such a request from Cammack and the prosecutor, Judge Callahan had the discretion to terminate the previously imposed condition, find Cammack had satisfied the remaining conditions required by the court, and seal the court file.[7]

[¶22.]       The problem here is that Judge Callahan did not—on October 4, 2021—enter an order terminating the previously imposed condition. As explained in Judge Callahan's response to this Court's directive, on the same day he entered

---

7.    Chief Justice's dissent on this issue incorrectly states that this opinion concludes that the magistrate court was without *authority* to enter the October 4 seal order. *See infra* ¶ 41. As explained above, although the court had the authority to seal the criminal file if the conditions of the suspended imposition had been satisfied, here, the governing order entered by the court suspending the imposition of sentence contained an express condition that had not yet been satisfied at the time the court entered the seal order.

the order sealing Cammack's court file, he also entered a written order memorializing his suspension of the imposition of Cammack's sentence, effective June 29, 2021, which included the condition that Cammack obey all laws for six months. Such period would not expire until December 29, 2021. Thus, the court's finding in its October 4 seal order that Cammack had observed all the conditions imposed by the court was erroneous because on that date, Cammack could not have satisfied the conditions set forth in the corresponding order suspending the imposition of his sentence.

[¶23.] However, the error did not occur because of an improper exercise of discretion. As Judge Callahan has explained in his response to this Court, it was his intention "to lift" this condition on October 4, 2021, but the October 4 order suspending the imposition of sentence prepared for his signature inadvertently retained the initially imposed condition that Cammack obey all laws for six months. Judge Callahan has further advised that he conferred "with the lawyers" and has now remedied this "clerical error" by issuing an amended order on December 15, 2021, removing the condition that Cammack not violate any laws.

[¶24.] South Dakota's rules of criminal procedure allow for such corrections. "Clerical mistakes in judgments, orders or other parts of a record and errors in a record *arising from oversight* or omission may be corrected by a court at any time and after such notice, if any, as the court orders." SDCL 23A-31-2 (emphasis added). For example, in *Lykken v. Class*, the circuit court had orally pronounced its sentence and then realized within minutes that it failed to state whether the sentences on two counts were to run concurrently or consecutively. 1997 S.D. 29, ¶¶

8–9, 561 N.W.2d 302, 305. After the court recognized its mistake, it reconvened with the parties and their attorneys and corrected the sentence to provide, consistent with the court's written notes, that the sentences were to run consecutively. *Id.* ¶ 9.

[¶25.] On habeas, the defendant asserted that the circuit court unlawfully enlarged his sentence. This Court disagreed, concluding that the circuit court corrected an inadvertent omission from its intended sentence. *Id.* ¶ 10. We noted SDCL 23A-31-2 is identical to the federal rule of criminal procedure and that federal courts have explained the purpose of the rule is "not to allow reassessment of the merits of an earlier decision" but to allow correction of errors that occur in transcription of judgments or orders. *Id.* ¶ 11, 561 N.W.2d at 306 (citations omitted). We further noted that the court's written notes reflected that a consecutive sentence was intended and that the court had merely omitted relaying that portion of the notes when it orally pronounced the sentence. *Id.* ¶ 10. Because an "[e]xamination of the entire record readily demonstrates the sentencing court intended these sentences to run consecutively[,]" *see id.* ¶ 13, the Court upheld the circuit court's correction, *see id.* ¶ 18, 561 N.W.2d at 307. *See also State v. Whalen*, 367 N.W.2d 186, 187 (S.D. 1985) (upholding the circuit court's order entered six months later as "a valid correction of an oversight or omission as authorized by SDCL 23A-31-2").

[¶26.] After reviewing Judge Callahan's submission to this Court and the documented email exchange between counsel and the court appended to the Journal's applications, it is apparent that Judge Callahan intended to remove the

obey all laws provision on October 4, 2021, but mistakenly signed an order (wrongly titled as a judgment) prepared for his signature that retained the condition that Cammack obey all laws for six months. Thus, Judge Callahan acted within his authority under SDCL 23A-31-2 when he issued a corrective order on December 15, 2021, that removed the condition at issue consistent with what he stated he would do in his October email exchange with counsel.

[¶27.] However, Judge Callahan's authority to correct this error does not resolve the question whether the Journal had a right to access Cammack's court file up to the time the amended order was entered. The Journal argues that because the condition of Cammack's suspended imposition of sentence requiring him to obey all laws for six months had not been fulfilled on October 4, 2021, Judge Callahan acted in excess of his authority and violated the Journal's legally protected right of access to judicial records when he entered an order sealing the court file effective on that date. In response, Judge Callahan asserts that the Journal does not have a right of access to Cammack's file because he has now corrected his error by issuing the December 15, 2021 amended order, which was signed nunc pro tunc October 4, 2021.

[¶28.] It is well settled that a "'[n]unc pro tunc' judgment is a judgment entered to make the record speak the truth and the function of such entry is to correct the judicial records insofar as they fail to record a judgment by the court[.]" *Andersen v. Andersen*, 2019 S.D. 7, ¶ 11, 922 N.W.2d 801, 803 (quoting *In re B.A.R.*, 344 N.W.2d 90, 94 (S.D. 1984) (Henderson, J., concurring in part and dissenting in part)). "'*Nunc pro tunc*' means 'now for then' and when applied to entry of a legal

order or judgment, it normally refers, not to a new or de novo decision, but to the judicial act previously taken, concerning which the record is absent or defective, and the later record-making act constitutes but later evidence of the earlier effectual act." *Id.*

[¶29.]     As Chief Justice Jensen explains in his dissent on this issue, a nunc pro tunc designation has been used by other courts in orders correcting sentencing errors. *See infra* ¶ 42 (citing cases). However, neither the cases cited by Chief Justice Jensen nor this Court's past decisions address the more pertinent question at issue here—whether an amended order should be given nunc pro tunc effect when it prejudices a third party's right.[8] A review of cases from other courts reveals that there are exceptions to the general premise that a nunc pro tunc order is deemed effective back to the date of the original order in scenarios when the relation back would impact the rights of a party or of a third party.

[¶30.]     For example, the Supreme Court of Appeals of West Virginia declined to give retroactive effect to an amended order entered nunc pro tunc because doing so would have cut off the defendant's right to appeal. *Dement v. Pszczolkowski*, 859 S.E.2d 732, 741 n.12 (W. Va. 2021); *see also Baker v. Gaskins*, 24 S.E.2d 277, 278 (W. Va. 1943) (refusing "to give a retrospective effect to this judgment order which

---

8.     Contrary to Chief Justice Jensen's contention, *see infra* ¶ 41 n.11, the Journal relied on the existence of a condition of Cammack's sentence that had not yet been satisfied (a condition set forth in the dispositional notes in Odyssey and later reflected in the court's October 4 order suspending the imposition of sentence) when it asserted its right to access Cammack's court file. The attempt to make the correction of this clerical error retroactive via a nunc pro tunc order did, therefore, impact the Journal's right to access this information.

would result in cutting off the plaintiff's time for applying for a writ of error"). The Colorado Court of Appeals also declined to give operational effect to a nunc pro tunc judgment as against an innocent entity who had acquired property rights after the entry of the original judgment and before the amended judgment. *Goodman Assoc., LLC v. Winter Quarters, LLC*, 292 P.3d 1060, 1064–65 (Colo. App. 2012).

[¶31.]    While both *Dement* and *Goodman* are distinguishable factually and procedurally from the circumstances here, multiple secondary sources likewise support that a judgment or order entered nunc pro tunc should not be applied as though it was entered on the date of the original judgment or order when the rights of third parties are affected. As one secondary source explained, "[e]*xcept as to the rights of third persons*, a valid judgment entered nunc pro tunc is retrospective and has the same force and effect as though it had been entered at the time when the judgment was originally rendered." 49 C.J.S. *Judgements* § 162 (May 2022) (emphasis added); *see also* 56 Am. Jur. 2d *Motions, Rules, and Orders* § 62 (providing that "a court's inherent power to correct clerical errors through nunc pro tunc treatment *may not be wielded when third parties have substantive rights in play* that may be altered by recording a fact as of a prior date, when it did not exist then" (emphasis added)).

[¶32.]    Here, it is undisputed that in October 2021 the Journal had the right to access Cammack's court file because, at that time, Cammack still had an unsatisfied condition of his suspended sentence as reflected in the governing order signed and filed by the court. *See Miller,* 2000 S.D. 63, ¶ 5, 610 N.W.2d at 80. Moreover, when Judge Callahan became aware of the error during the course of the

current writ proceedings and issued his amended order, nunc pro tunc October 4, 2021, the Journal's writ applications—seeking to challenge the very authority of the court to seal the record on this date—were still pending. As such, although Judge Callahan clearly acted within his discretion in issuing an amended order on December 15, 2021, to correct his prior oversight, we decline to give the order nunc pro tunc effect. Under the circumstances here, to do so would impact a third party's substantial right, i.e., the Journal's right to access Cammack's court file when it made such a request in October 2021. We therefore conclude that the Journal is entitled to access the court file that existed up to the date of Judge Callahan's amended order suspending the imposition of Cammack's sentence that has now made the corresponding seal order lawful under SDCL 23A-27-14 and SDCL 23A-27-17.

[¶33.] Although we have determined that the Journal is entitled to access these additional court records, there is nothing in the record to support the Journal's suggestion that some form of "government secrecy" was at play here. Cammack's court file was accessible to the public from the time it was opened in January 2020 until October 4, 2021. Each hearing during this timeframe was open to the public, including Cammack's plea hearing during which Cammack received the suspended imposition of sentence and the court imposed its conditions. Moreover, while Judge Callahan denied the Journal access in October 2021 to the file after he entered what he believed to be a lawful seal order, Cammack's counsel, in response to the Journal's inquiries, provided the Journal with Cammack's arrest documents and the emails between the court and both counsel that led to the court

sealing the file. Were it not for the fact that the October 4, 2021 order suspending imposition of sentence mistakenly included the obey all laws condition, Judge Callahan's seal order would have been proper and the Journal's argument and request for relief would have lacked merit.

[¶34.] However, for the reasons expressed in this opinion, we grant the Journal's application for a writ of mandamus and direct Judge Callahan to provide the Journal access to any documents filed up to and including the court's amended order suspending imposition of sentence entered on December 15, 2021. This would include Judge Callahan's initial order suspending imposition of sentence entered on October 4 that retained the obey all laws condition and the court's December 15, 2021 amended order removing this condition. A writ of mandamus will issue following the expiration of the time for petitioning for rehearing pursuant to SDCL 15-25-3 or following the resolution of any such petition.

[¶35.] KERN and SALTER, Justices, concur.

[¶36.] JENSEN, Chief Justice, and MYREN, Justice, concur in part and dissent in part.

JENSEN, Chief Justice (concurring in part and dissenting in part).

[¶37.] I agree with the majority opinion's resolution of the standing issues, but I dissent from the determination that this Court should exercise its original jurisdiction to grant the Journal's petition for a writ of mandamus.

[¶38.] "A writ of mandamus 'is an extraordinary remedy that will issue only when the duty to act is clear.'" *Thompson v. Lynde*, 2018 S.D. 69, ¶ 8, 918 N.W.2d 880, 883 (citation omitted). To prevail on a petition for a writ of mandamus, "the

petitioner must have a clear legal right to performance of the specific duty sought to be compelled and the respondent must have a definite legal obligation to perform that duty." *Sorrels v. Queen of Peace Hosp.*, 1998 S.D. 12, ¶ 6, 575 N.W.2d 240, 242.

[¶39.] On this record, the Journal has failed to establish a clear legal right to the extraordinary relief it seeks to compel Judge Callahan to unseal the file. The Journal's own submissions demonstrate that the parties agreed in an email exchange on October 1 to modify the six-month probation condition and immediately seal the file. Judge Callahan also indicated his willingness to modify the sentence to permit the file to be immediately sealed.[9] Additionally, despite the clerical error to the contrary in the sentencing order, Judge Callahan's decision to modify Cammack's sentence to remove the six-month condition to obey all laws is confirmed in the accompanying seal order in which Judge Callahan affirmatively found "the defendant has observed *all* conditions imposed by the court" and ordered "that all official records in this action be sealed, along with all recordation relation to the defendant's arrest, indictment, trial, *and dismissal and discharge.*" (Emphasis added.) Finally, the court's decision to modify the six-month condition is demonstrated in the clerk's note on the October 4 entry of the order to seal, stating "(SUSPENDED IMP OF SENT/*NO PROBATION*)." (Emphasis added.)

---

9. Cammack's counsel represented in one email that Cammack had intended to ask for an immediate seal order at the time of the June sentencing but had failed to do so. Cammack's counsel then asked if the State had "[a]ny objection to *modifying* the case to grant an immediate seal . . . ?" (Emphasis added.) The State indicated that it had "no objection[.]" Judge Callahan then responded, "I have no problem with an immediate seal assuming it was paid (and I suspect it was)."

[¶40.]　　　　The Journal's theory in its petition, that Judge Callahan improperly sealed the file on October 4, 2021, is based upon the faulty premise that the court did not have the authority to modify the terms and conditions of Cammack's sentence to reduce the length of time he was required to obey all laws. SDCL 23A-31-1 is clear that "[a] court may reduce a sentence: (1) [w]ithin two years after the sentence is imposed[.]"[10]

[¶41.]　　　　I also disagree with the majority opinion's conclusion that the court was without authority to enter a seal order on October 4 and that the nunc pro tunc order was ineffectual to correct the clerical error in the October 4 sentencing order.[11] SDCL 23A-31-2 provides that "[c]lerical mistakes in judgments, orders, or other parts of a record and errors in a record arising from oversight or omission may

---

10.　　Further, a court has specific authority under SDCL 23A-27-20.1 to modify any term or condition of probation and may even lengthen a probationary period. Here, the magistrate court reduced the probation term after both parties specifically consented to the modification of the original sentencing order.

11.　　The majority opinion cites authorities and cases from other jurisdictions holding that a nunc pro tunc order may not relate back to the date of the original order when the substantial rights of a third party are prejudiced by the order. *See Dement*, 859 S.E.2d at 741 n.12; *Baker*, 24 S.E.2d at 278; *Goodman Assoc.*, 292 P.3d at 1064. The majority opinion acknowledges these cases are readily distinguishable from the facts of this case. More importantly, the cases refusing to retroactively apply a nunc pro tunc order all involved prejudice to a third party caused by *reliance* upon the clerical error in the original order. Here, in contrast, the Journal was left in the same position after the October 4 order irrespective of the error and the later correction of that error. The Journal had no cognizable right to access the information once Judge Callahan decided to modify Cammack's sentence to remove the probation condition, found Cammack had satisfied all the conditions of the sentence, and exercised his lawful authority to seal the file. Neither the clerical error in the October 4 sentencing order nor the later nunc pro tunc order's correction of the error prejudiced the Journal in any fashion.

be corrected by a court at any time and after such notice, if any, as the court

orders."

> When an order is entered nunc pro tunc to the date of the court's oral ruling, this is an exception to the general rule that an order is ineffective until signed and filed. Nunc pro tunc orders are limited to situations where there is an obvious error that needs correction or where it is necessary to conform the order to the court's original intent.

56 Am. Jur. 2d *Motions, Rules, and Orders* § 62 (2022). We have recognized that

"[c]ourts have the inherent power to *correct* their records to reflect accurately the

judgment of the court, whether the correction is necessitated by clerical errors or

inadvertence." *Coffey v. S.D. Bd. of Pardons & Paroles*, 1999 S.D. 164, ¶ 9, 604

N.W.2d 238, 240 (emphasis added) (citation omitted). Thus, a nunc pro tunc order

correcting a clerical error does not amend the sentence, but rather corrects the

record to reflect the sentence actually imposed. *See State v. Sims*, 761 N.W.2d 527,

535 (Neb. 2009) (explaining that the "purpose of [an order nunc pro tunc] is to

correct the record which has been made, so that it will truly record the action really

had, but which through some inadvertence or mistake has not been truly recorded"

(alteration in original) (citation omitted)).

[¶42.] Other courts have recognized that a nunc pro tunc order correcting a

clerical error is effective back to the date of the original order. *State v. Smissaert*,

694 P.2d 654, 657 (Wash. 1985) (recognizing that a nunc pro tunc order effecting a

retroactive judgment to correct omissions in the record relates "the new sentence

back to the date of original sentencing" and "is appropriate only to correct

ministerial or clerical errors"); *State v. Clark*, No. 2010CA00006, 2010 WL 3784456,

at *2 (Ohio Ct. App. Sept. 27, 2010) (holding under Ohio's criminal procedure rule

governing clerical mistakes, a nunc pro tunc entry relates back to the date of the sentencing entry it corrects).

[¶43.] This Court should not exercise its original jurisdiction to issue a writ of mandamus based upon an undisputed clerical error in a sentencing order that did not impact the Journal's right to access Cammack's file. *See* SDCL 15-25-1 ("The exercise of original jurisdiction granted by Supreme Court by the S.D. Const., Art. V, § 5, is reserved for consideration of matters of prerogative, extraordinary, and general concern."). Further, the Journal has failed to show a *clear legal right* to a writ of mandamus to compel Judge Callahan to provide the criminal file that was sealed on October 4. The record reflects that Judge Callahan heard from the parties and made the decision to modify Cammack's sentence on October 1, notwithstanding the undisputed clerical error in the October 4 sentencing order. Judge Callahan's finding on October 4 that Cammack had satisfied *all* the court's conditions, a finding uniquely within the discretion of the sentencing court, confirmed Judge Callahan's decision to modify the conditions of Cammack's sentence and authorized Judge Callahan to seal the file pursuant to SDCL 23A-27-14 and SDCL 23A-27-17.[12]

---

12. I join in the majority opinion's view that the Journal has inaccurately postured this as a case of "governmental secrecy." The Journal's own submissions show that Cammack and his counsel voluntarily provided more information to the Journal about this case and the circumstances leading to the charges than are available in the court file, or than would normally be publicly accessible in a typical magistrate court proceeding that ends in a guilty plea. In my view, the case could also be dismissed as moot because the writ of mandamus will not provide information to the Journal that has not already been made available. *Netter v. Netter*, 2019 S.D. 60, ¶ 9, 935 N.W.2d 789, 791 ("A moot case is one in which there is no real controversy or which

(continued . . .)

#29811, #29812

[¶44.]       MYREN, Justice, joins this writing.

---

(. . . continued)
seeks to determine an abstract question which does not rest on existing facts or rights, with the result that any judicial determination would have no practical or remedial effect." (citation omitted)).